WILLIAM BRADDOCK, JR., v. THE PHILADELPHIA, MARL-
TON AND MEDFORD RAILROAD COMPANY.

1. A suit will not lie on a subscription to the stock of a corporation or-
   ganized by virtue of the general railroad law, without a previous call
   made by the directors for the sums so subscribed
2. Proof that a notice of a call for the subscriptions by the directors was
   duly mailed and addressed to a subscriber, made a *prima facie* case of
   notice of such call.
3. Proof that certain of the promotors of a railroad scheme guaranteed
   that the route would pass near to a certain tract of land, accompanied
   with proof of a deviation from such line, will not be sufficient to dis-
   charge a subscriber who had subscribed in reliance on such statement,
   there being no evidence tending to show any fraudulent intent.

---

On error to the Supreme Court.

For the plaintiff in error, *Benjamin D. Shreve.*

For the defendant in error, *Peter L. Voorhees.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This was a suit brought by
the defendant in error to recover the sum of money subscribed
by the plaintiff for a certain number of the shares of the capi-
tal stock of the company then about to be organized.   The
legal questions propounded for solution are exhibited in the
bills of exception taken at the trial, and there were three

grounds of objection upon which the plaintiffs in error relied for the reversal of this judgment.

The first of such grounds is that there was no call for the sums subscribed legally made by the board of directors of the company.

It is clear that a suit will not lie on a subscription of this kind before such a call has been made. This company is a corporation organized under and by force of the provisions of the general railroad law of this state. By section 7 of that act (*Rev., p.* 926,) it is provided " that the directors may require the subscribers to the capital stock of the company to pay the amount by them respectively subscribed in such manner and in such instalments as they may deem proper." In the following clause of this section a particular mode of notification to the stockholder is prescribed in the event of the company's undertaking to enforce the payment of subscriptions by a forfeiture of the stock and of previous payments made by the subscriber. But the former of these clauses, which contains the requisition on the directors to call in the sums subscribed appears applicable in every case of a proceeding to collect the moneys subscribed. A suit at law will not lie until such call has been duly made. But in the present instance I think the trial judge was right in his holding that the proofs exhibited the proper action in this respect by the board of directors. The facts on this head were these : before this company had been organized, certain of the shareholders, assuming to act in the capacity of directors of the corporation, passed a resolution authorizing the president, secretary and treasurer to require the subscribers to the capital stock of the company to pay the amounts respectively subscribed in such amounts, and in such manner and in such instalments, as they may deem proper. This resolution was void, as it was passed in advance of the legal existence of the corporation. But at a subsequent date, and after the due organization of the company, the directors passed a resolution directing the president to take such proceedings toward the collection of subscriptions as would " most speedily and surely accomplish the object." This was plainly

a direction to the president to collect, not a part, but the whole of the moneys due from subscribers, and was, in substance, a call for the entire amount of the sums subscribed. A notification to a subscriber of this action of the board could have left him in no doubt on this subject. It seems to me that it would be a useless refinement to hold that in addition to a direction to collect the sums due, the directors must add a statement that they call in such sums. A call is nothing more than an official declaration that the sums subscribed are required to be paid. A direction to collect such sums involves, necessarily, such a declaration. This exception was not well taken.

The second ground of supposed error arose from the instruction of the judge on the subject of the testimony relating to the notification of the plaintiff in error that the moneys subscribed by him had been called in by the directors. But the judicial action in this respect was entirely unobjectionable. The plaintiff proved that a proper notice of this kind was duly mailed, and in answer to this the defendant testified that he did not remember the receipt of such notice. The question whether such notice was in point of fact made out, and was received by the plaintiff in error, was submitted for the decision of the jury. No other course could have been properly taken. Whatever doubts may at one time have existed on the subject, it is now the established rule that a presumption will arise that a paper duly mailed and addressed will reach its destination, and such presumption will not be overcome, as a matter of law, by testimony to the effect that the person to whom such instrument was sent does not remember that it came to his hands. Indeed, if he absolutely testifies that such paper so transmitted was not received by him, the question so presented would still be one of fact and not of law. The course taken in this respect at the trial was correct.

The remaining objections grew out of an offer made by the plaintiff in error, at the close of his adversary's case, to prove certain matters as a defence, and which offer was overruled by the court. This offer was as follows, viz.:

" Defendant's counsel then opened on part of defendant, and

offered to prove as follows, viz., that the defendant, Braddock, is a land-owner in the southerly part of Medford, and was so in 1879–1880; that in the latter part of 1879 a meeting was held in the village of Medford, and speeches were made by Charles D. Freeman, now president, and D. M. Zimmerman, now secretary and treasurer of the Philadelphia, Marlton and Medford Railroad Company, in which statements were made by them that the object of the meeting was the construction of a railroad from Haddonfield to Medford; that the business of the said railroad would be in the southern part of the village of Medford, and that the route of the road would be on or alongside the road-bed of the proposed railroad from Manchester to Camden; that defendant owned much real estate in that portion of the village of Medford, and the route of the Manchester and Camden railroad passes through his land; that the only object of his subscription to said railroad was the advantage he would derive from the passage of said road over his land, as he wished and expected to start a lumber and coal yard; that on the day of and at the meeting held at Medford, when Freeman and Zimmerman made the above statement and declarations, and after said statements and declarations were made, he subscribed his name to an agreement to take stock in the proposed railroad; that some time after he subscribed his name to said agreements, late in the afternoon, one Benjamin Cooper came to this defendant, while he was at work in a field, supervising men digging marl, and requested him to sign another paper; this defendant objected to signing it, stating that he did not have his spectacles and he could not read it without them, and that he did not like to sign a paper without reading it; Mr. Cooper then assured him that the paper he wished him to sign was just like the one he signed before, and that it was a mere matter of form, and insisted on the defendant signing the paper immediately, as he had to go to get other signatures and it was late in the day, and the paper must be sent to Trenton next day, and upon these assurances and under these representations from Benjamin Cooper, he signed the paper, and has since learned that the

paper he signed was the articles of association; that the rail-road, as constructed, terminates in the northern end of the village, three-quarters of a mile from the terminus designated at said meeting in the latter part of 1879, and that defendant owns no property and has no interest in the upper part of the village of Medford; that he never heard of the change of terminus nor had any intimation of a change thereof until after he had signed the second paper; that he never, to the best of his knowledge, received any notice of any call being made for the payment of the stock subscribed for by him; that Benjamin Cooper, prior to the signing of the second paper, stated to this defendant that the road would go to the south of the village of Medford; that he, Benjamin Cooper, had been to the city of New York to procure the right of way of the Manchester and Camden Railroad Company, and that the road would be built on or alongside the route of the Manchester and Camden Railroad Company. [The whole of the above offer by defendant, as proof in his defence, is overruled, the same not being any defence in this action if proved, except that he may prove that he never received any of the notices to pay."]

If the whole of the facts here stated had been proved, it is clear that the plaintiff in error would have failed to establish a defence to the suit. Admit that the statements in question as to the projected route of the road at the point mentioned were made and that the road, when laid, did not correspond with such statements, certainly the plaintiff in error could not avoid his liability on that ground. There was no offer to show that such statements were false or fraudulent. Every one knows that in the laying of a railroad deviations from the projected route frequently occur. The law will not impute falsehood, and if the defence consisted in the fact that a fraud was practiced upon him, he was bound to offer to prove such misconduct.

With respect to that part of the offer which relates to his signing the paper sued on, in consequence of the statement that it was like the one which he had previously signed, it is

sufficient to say that there was no offer to show that the two papers in question were different with regard to their legal effect. How these two instruments varied, or that they varied to his detriment, the plaintiff in error did not proffer himself ready to show. All that we know about these instruments is that he calls one a subscription to stock and the other articles of association. In legal effect they may have been equivalents. This, again, was intended to be a defence on the ground of fraud, and the facts embraced in the offer did not constitute a fraud.

The judgment should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, DIXON, KNAPP, SCUDDER, CLEMENT, COLE, KIRK, WHITAKER.    9.

*For reversal*—THE CHANCELLOR, MAGIE, REED, VAN SYCKEL, GREEN, PATERSON.    6.