CHARLES A. BLESSING, DEFENDANT IN ERROR, v. JAMES McLINDEN, IMPLEADED, &c., PLAINTIFF IN ERROR.

Submitted December 5, 1910—Decided March 6, 1911.

1. The action of the court in striking out frivolous and sham pleas under section 111 of the Practice act (*Pamph. L.* 1903, *p.* 569), is not reviewable on error.
2. The "due process of law" clause of the fourteenth amendment of the federal constitution, as construed by the Supreme Court of the United States in *Pennoyer* v. *Neff*, 95 *U. S.* 714, 733, has the effect of nullifying so much of section 2 of our "Act concerning obligations" (*Gen. Stat., p.* 2336), as provides that a personal judgment may be taken against a joint debtor not served with the process of the court—at least in case such debtor be not a citizen or resident of this state.
3. Section 2 of our "Act concerning obligations" (*Gen. Stat., p.* 2336), notwithstanding its annulment *pro tanto* by the fourteenth amendment, remains a practical working enactment, and permits a judgment against such joint debtors as have been brought into court.
4. Where one of two joint debtors resides within this jurisdiction, and the other is a non-resident and is not found to be served with process within this state, the plaintiff may have his judgment against the resident debtor who has been served with process, omitting the non-resident.

379

On error to the Cape May Circuit Court.

For the plaintiff in error, *Louis H. Miller.*

For the defendant in error, *Harrison H. Voorhees.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. The record shows that Blessing, now defendant in error, commenced suit in the Cape May Circuit Court against William H. Quigg and James McLinden (the latter now plaintiff in error), to recover the amount due upon a judgment theretofore rendered against them as co-partners in a court of record of the State of Pennsylvania. Summons against both defendants was issued to the sheriff of the county of Cape May, and to it the declaration was annexed as permitted by the Practice act. *Pamph. L.* 1903, *p.* 564, § 95. The sheriff returned that the summons and declaration were served personally upon McLinden, and that Quigg could not be found in his county, and according to the information and belief of the sheriff was a resident of the State of Pennsylvania.

The defendant, McLinden, appeared, and filed certain pleas, which, on motion of the plaintiff, were struck out upon the ground that they were sham and frivolous and did not set up any defence to the action.

Judgment by default was thereupon entered in behalf of the plaintiff, and against McLinden alone as defendant, for the amount claimed to be due upon the Pennsylvania judgment, with costs.

The grounds relied upon for reversal are—*first,* that the Circuit Court erred in striking out the pleas; and *secondly,* that the court erred in rendering judgment against the defendant, McLinden, alone, whereas it is insisted that under the "Act concerning obligations," approved March 27th, 1874 (*Gen. Stat., p.* 2336, § 2), the judgment, if any judgment was lawful, should have been against both Quigg and McLinden as co-partners.

The record shows that the pleas in question were struck out as sham and frivolous. This court decided in *Brown* v. *War-*

*den*, 15 *Vroom* 177, that an order overruling a pleading on this ground is not the subject-matter of review in this court. Attention was called to the difference in language between sections 132 and 133 of the Practice act of 1874 (*Rev.* 1877, *p.* 868; *Gen. Stat.*, *p.* 2555), the former of which sections, relating to the striking out of irregular and defective pleadings, directed that the order striking them out might be entered on the record and error assigned thereon, while the succeeding section, applying to sham and frivolous pleadings, contained no similar provision for subjecting the order to review on error. The substance of these provisions is found in sections 110 and 111 of our present Practice act (*Pamph. L.* 1903, *p.* 569), and there is still no provision for a review of the action of the court in striking out frivolous and sham pleas.

Therefore the first ground cannot avail the plaintiff in error here.

The pleas being thus eliminated, and the plaintiff having thereupon proceeded to take judgment by default as for want of a plea, it remains to be considered whether his judgment against McLinden alone is erroneous. As to this, the argument is that under section 2 of our act concerning obligations (*Gen. Stat.*, *p.* 2336), while one of two defendants jointly indebted to the plaintiff may be required to answer, he nevertheless remains only jointly liable; that the judgment provided for by the act must be a joint judgment, and may not be a judgment against the answering defendant alone; that the act may not be reasonably construed to change a joint liability to a several liability; that by virtue of the adoption of the fourteenth amendment of the federal constitution, as construed by the Supreme Court of the United States in *Pennoyer* v. *Neff*, 95 *U. S.* 714, our statute is either rendered totally ineffective, or must be limited in its effect as against the joint debtor not served so as to be enforceable only against the joint property; but that in any event the act requires that the judgment shall go against all the joint obligors or against none.

The act referred to derives its origin from colonial times. The first enactment was in 1771 (*Allin.* 353), and was entitled "An act to enable creditors more easily to recover their

debts from joint partners within the colony of New Jersey." Its preamble recited that "Creditors are often put to great trouble and difficulty in recovering debts due from joint partners, the proceedings to outlawry against persons who cannot be taken by process not being in use in this colony, and doubts have arisen whether any one joint partner is now compellable to answer for the partnership debts unless all are brought into court, which many times cannot be done;" for remedy whereof it was enacted: "That all persons that now are, or hereafter shall be jointly indebted to any other person or persons whatsoever, for any joint contract, obligation, matter or thing whatsoever, for which a remedy could or might be had against such debtors, in case all were or could be taken by process issued out of the courts of this colony, shall be answerable to their creditors separately for such debts; that is to say, such creditor or creditors shall and may issue process against such joint debtors, in the manner now in use; and in case any or either of such joint debtors shall be taken and brought into court by virtue of such process, he, she or they, so taken and brought into court, shall answer to the plaintiff or plaintiffs; and in case the judgment pass for the plaintiff or plaintiffs, he or they shall have his or their judgment and execution against him, her or them that are brought into court, and against the other joint debtors named in the proofs, in the same manner as if they had all been taken and brought into court by virtue of such process."

This act was revived and continued in force by act of 1782 (*Wils*. 311), and in Paterson's Revision its substance was incorporated into the "Act concerning obligations," &c. (*Pat. L.,* p. 254), the word "process" being substituted for "proofs." It was re-enacted in the revised "Act concerning obligations" of 1874. *Gen. Stat.,* p. 2336, § 2.

The purpose and effect of the act will be better understood after a brief reference to the law as it theretofore stood.

The old English practice respecting actions against joint debtors, some only of whom could be served with process, was to proceed to outlawry against the absent or absconding defendant, and having done this to prosecute the action against

the defendant who was served, declaring against him alone upon a joint contract made by him and the absentee. 1 *Tidd Pr.* (*3d Am. from 9th London ed.*) *130, 131; 1 *Chit. Pl.* (*13th Am. from 6th London ed.*) *42; 2 *Id.* *8.

But this practice did not rest upon the ground that the joint contractor, who was within the jurisdiction, had any right to have his fellow joined as defendant if the latter were without the jurisdiction. The law did not deny a recovery against one joint contractor because his co-contractor could not be served with process. The non-joinder of one of several joint contractors could be availed of only by plea in abatement, and such plea must inform the plaintiff of the names of the parties not joined, and must state that they were still living unless this appeared on the face of the declaration. *Rice* v. *Shute, Burr.* 2611; 1 *Smith Lead. Cas.* (*H. & W. ed.*) *645 and notes; 1 *Chit. Pl.* *43, 46; 2 *Id.* *901; *Mershon* v. *Hobensack,* 2 *Zab.* 372, 379; 3 *Id.* 580; *Lieberman* v. *Brothers,* 26 *Vroom* 379; *Dic. Part.* 11, 12.

Under the ancient practice, a plaintiff who commenced his action against one only of two joint obligors, where the other resided beyond seas, subjected himself to the risk that the action might be abated and he be put to the cost and delay of a new action with proceedings for outlawry. It was principally in order to avoid this risk, and not because of any apprehension that the right of action against the resident debtor would otherwise be in jeopardy, that a prudent plaintiff instituted his suit against both joint debtors and took proceedings for outlawry, in the first instance, if one of the joint debtors was absent or absconding. In some cases, no doubt, it was deemed important to join the absentee in order either to enforce a forfeiture of his property or to avoid waiving the right to proceed against him in a subsequent action. See 1 *Chit. Pl.* *46; per Coltman, J., in *Joll* v. *Lord Curzon,* 4 *Man. Gr. & S.* (*C. B.*) 255.

The English practice was amended by statute 3 and 4 William IV., chapter 42, section 8, which required that a plea in abatement for non-joinder of a defendant should be accompanied by an affidavit stating the *residence in England* of the

omitted defendant (1 *Chit. Pl.* *46), the practical effect of which was to prevent the resident debtor from objecting to the non-joinder of his co-obligor unless the latter resided within the jurisdiction. *Dic. Part., rule* 49, 230, 232. And see our Practice act, section 38, *Pamph. L.* 1903, *p.* 545.

In our colonial times, proceedings to outlawry not being in use here, the doubt arose that is referred to in the preamble of our act of 1771, which was solved for this colony by requiring the resident debtor to answer, and permitting judgment to be taken against him and the non-resident together. (Pennsylvania adopted the simpler solution of holding that as there was no process of outlawry in civil actions, the return of *non est inventus* had the same effect. *Dillman* v. *Schultz,* 5 *S. & R.* 35.) The effect of our act was to prevent the abatement of the action for failure to proceed to outlawry against the non-resident joint debtor, and to provide that the plaintiff might take judgment against him as well as against the debtor who was served with process.

The statute came under criticism in our Supreme Court, in *Harker* v. *Brink,* 4 *Zab.* 333, where it was ingeniously and ably argued that upon principles of natural justice, it should not be construed to allow a judgment against non-residents who had not been served with process, because they would thereby be condemned without hearing or opportunity to be heard; and that if the statute must be construed as extending to foreign persons and contracts it was to that extent invalid, because opposed not only to natural justice but to the fundamental principles of the social compact. The court, however, held, in an opinion by Chief Justice Green, that the act was obviously intended to apply to non-residents, being designed as a substitute for outlawry, which applied as well to non-resident foreigners as to denizens. It was further held that the act was not void in so far as it authorized judgment to be entered against a defendant who had neither been served with process nor attached by his property nor actually appeared to the suit. But whether the judgment would be regarded as conclusive by the courts of this state as against the party not served and not

appearing, and whether it would be enforced by the tribunals of other states, were questions mooted but not decided.

Even prior to the adoption of the fourteenth amendment, however, it was well settled that if one of the debtors was not within the state, not served with process, and did not voluntarily appear, the judgment could not be enforced against him in any other jurisdiction, even though by the *lex loci* a service on the co-obligor resident within the jurisdiction were sufficient to authorize a judgment against all. *D'Arcy* v. *Ketcham,* 11 *How.* 165; *Thompson* v. *Whitman,* 18 *Wall.* 457; *Knowles* v. *Gas Light and Coke Co.,* 19 *Id.* 58; *Hall* v. *Lanning,* 91 *U. S.* 160; *Hanley* v. *Donoghue,* 116 *Id.* 1; *Renaud* v. *Abbott,* 116 *Id.* 277; *Phelps* v. *Brewer,* 9 *Cush.* (*Mass.*) 390.

*D'Arcy* v. *Ketcham,* 11 *How.* 171, brought under consideration a New York statute that provided that "where joint debtors are sued, and one is brought into court on process, he shall answer the plaintiff; and if judgment shall pass for the plaintiff, he shall have judgment and execution not only against the party brought into court, but also against other joint debtors named in the original process, in the same manner as if they had all been taken and brought into court by virtue of such process; but it shall not be lawful to issue or to execute any such execution against the body or against the sole property of any person not brought into court." By the New York courts it had been held that such judgment was valid and binding on an absent defendant as *prima facie* evidence of the debt, reserving to him the right to enter again into the merits and show that he ought not to have been charged. It was held by the Supreme Court of the United States that the statute, and the judgment founded upon it, were not binding upon a citizen of Louisiana not served with process in New York; that the judgment was not even *prima facie* evidence in a Louisiana suit, and not entitled to any faith or credit outside of the state in which it was rendered.

Until the adoption of the fourteenth amendment, however, it was commonly held that a state might authorize a personal judgment, good within its own territory, against one who had

not been subjected to the process of its courts by service of such process within the jurisdiction.

But by that amendment it was (among other things) provided that no state should deprive any person of life, liberty or property without due process of law, and this was construed by the Supreme Court of the United States in *Pennoyer* v. *Neff,* 95 *U. S.* 714, 733, to deprive a personal judgment of all validity, either within or without the state that rendered it, if it were rendered by a state court in an action upon a money demand against a non-resident served by a publication of notice or summons, but upon whom no personal service of process within the state had been made, and who had not appeared to the action.

See *Elsasser* v. *Haines,* 23 *Vroom* 10, 15; *Smith* v. *Colloty,* 40 *Id.* 365, 371.

We deem it clear that one effect of the amendment, as thus construed, was to render it unlawful in an action against joint debtors, under our statute, to give judgment against any debtor not brought into court by virtue of its process, at least in case such debtor be not a citizen or resident of this state. And so our Supreme Court intimated in *United States* v. *Griefen,* 44 *Vroom* 195, 197.

The act, in its latest revised form, was enacted in 1874, subsequent to the adoption of the fourteenth amendment, which occurred in 1868. But, upon familiar principles, the act speaks as of the time of its original enactment (*Smith* v. *Colloty,* 40 *Vroom* 370, and cases cited), and therefore may be treated as having been followed by that amendment, and nullified *pro tanto* by it, rather than as having been subsequently enacted in the teeth of the constitutional prohibition.

Nor is the statute, as thus amended, any the less a practical working enactment. Its primary purpose, as evidenced not only by its provisions but by the original preamble in Allinson, was to subject the resident joint debtor to responsibility. This object was sought to be carried out by authorizing the plaintiff to take judgment and execution "against such of them so brought into court and against the other joint debtor or debtors named in the process." Eliminating the "other joint debtor

or debtors" on the ground that they have not been served with process, still leaves the statute as permitting a judgment against such joint debtors as have been brought into court.

The result is that where one of two joint debtors resides within this jurisdiction and the other is a non-resident, and is not found to be served with process in this state, the plaintiff may have his judgment against the resident debtor, omitting the other. This was the practical outcome, in ordinary cases, under the common law practice of outlawry.

In *Stehr* v. *Ollbermann,* 20 *Vroom* 633, 635, in an opinion delivered for this court, it was said that as the defendants were joint debtors, one of whom had been brought into court in a suit against all, judgment could not be entered against the defendant who had been served with process alone. This, however, was *obiter dictum,* the question presented being the propriety, under our statutory practice, of entering a judgment against all the defendants, including those not served, upon the basis of a notice limiting the defendants' time for pleading, which notice had been served upon the resident defendants alone. It is quite evident, from the report of the case, that the effect of the fourteenth amendment upon the rights of the parties was not called to the attention of the writer of the opinion.

We find it unnecessary to consider whether the principle of the decision in Pennoyer *v.* Neff would invalidate a judgment rendered in conformity to our Joint Debtors' act against one of the several joint debtors (the others only being served with process), he being a citizen and resident of this state. See *Moulin* v. *Insurance Company,* 4 *Zab.* 249, per Chief Justice Green. That precise question does not require decision in order that the present case may be disposed of. For we may properly make, and ought to make, every reasonable intendment in favor of the validity of the judgment under review, and therefore may legitimately assume, if necessary, that the defendant Quigg was not a citizen or resident of this state, and could not in any manner be rendered subject to its jurisdiction.

We, therefore, find no error in the entry of judgment against the defendant McLinden alone.

Whether the plaintiff, by taking judgment against one only

of the joint debtors, debars himself from any future recovery against the other, is a question that does not now concern us. There seems to be a conflict of authority upon the point. See *Freem. Judg.* (*4th ed.*), §§ 231, 233; *Big. Estop.* (*5th ed.*) 104.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, SULLIVAN, JJ. 15.

*For reversal*—None.