GAR S. SPARKS, complainant-respondent,

*v.*

LEONARD LORENTOWICZ, defendant-appellant.

[Submitted October term, 1929.   Decided May 19th, 1930.]

*Messrs. Lum, Tamblyn & Colyer* (*Chester W. Fairlie,* of counsel), for the complainant-respondent.

*Mr. William Greenfield,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

This proceeding is on bill of complaint whereunder the court of chancery decreed that the defendant be permanently enjoined and restrained from further prosecuting against the complainant a dispossess proceeding in the second district court of the city of Newark and from forfeiting the lease between the parties, on account of default in payment of rent for January, 1929, on the day when due.   The defendant appeals from the decree.   We shall refer to the defendant-appellant as the landlord and to the complainant-respondent as the tenant.

The lease was for the term of twenty-one years beginning May 1st, 1924, with a yearly rental payable in equal monthly installments "in advance on the first business day of each month respectively."

Paragraph 5 of the lease begins:

"This lease is made upon the following conditions and covenants, all and each of which the tenant agrees to keep and perform, viz.:

(a) That he will pay the said rent at the times and in the manner aforesaid;"

to which are added twelve other paragraphs—"b" to "m" inclusive—of conditions and covenants assumed by the tenant; following which is:

"(n) That upon a breach by the tenant of any of the covenants herein provided to be kept and performed by him and failure to fully perform and comply therewith within thirty (30) days after the receipt of written notice from the landlord delivered to the demised premises, the tenant shall at the option of the landlord forfeit said term and all rights hereunder and the landlord may re-enter and recover immediate possession of said premises, and shall also have an action for all damages arising from any such breach or breaches. The failure of the landlord to exact a forfeiture for any breach or breaches hereof by the tenant shall not be deemed or construed as a waiver of the right of the landlord to exact a forfeiture for any subsequent breach or breaches by the tenant; no notice, however, shall be required of the non-payment of any of the above-mentioned installments of rent, which are due and payable on the first business day of each and every month, respectively; and in the event that dispossess proceedings be instituted either for a breach of any covenant or condition herein contained or for defaulting in payment of rent and the landlord shall repossess himself of said premises, the tenant shall nevertheless continue to be liable for any deficiency in the rentals herein reserved for the unexpired term hereby granted."

The rent appears never to have been paid on the first business day of the month. A schedule of the rental payments from January, 1927, to December, 1928, inclusive, shows that during that period no monthly rental was paid in advance on the first business day of the month, that a majority of the payments were at or after the middle of the month and that frequently the payments were in two installments. Under date of June 17th, 1927, a letter was written by or on behalf of the landlord to the tenant reading: "Dear Mr. Sparks: Beginning July 1st Mr. Lawrence insists that the rent be paid the first of every month. Thanking you to give this your attention, we are, very truly yours." Notwithstanding this

letter the payments were as indicated above and there was no further written communication on the subject until January 15th, 1929, when the landlord gave notice in writing to the tenant that the lease "is hereby terminated for the reason that you have failed and refused to pay the rent in accordance with the terms of said lease, due on the first day of January, 1929," reciting a portion of the provisions of said lease and making "demand that you move and vacate said premises and deliver up same to me within three days from date of service of this notice upon you." The only rent then unpaid was for the month of January, 1929, and the tenant immediately, upon receipt of that notice, made tender of the January rent to the landlord. The tender was refused. On the following day the amount of the January rent was again tendered together with interest from the due date and this tender was likewise refused. The landlord took the position that he had terminated the lease under the forfeiture clause for non-payment of rent and demanded possession. The rent for January and subsequent months has since been paid without prejudice to the rights of the landlord. The landlord, a few days after giving the notice, instituted dispossess proceedings under section 107 of the District Court act. *1 Cum. Sup. Comp. Stat. p. 970 §§ 61, 107.* Inasmuch as the proceedings were to secure possession after term ended, the provisions of section 108 (*2 Comp. Stat. p. 1988*), stopping the proceedings on payment of rent did not apply. The landlord complains of the chancery decree in the following respects: that the restraint was wrongfully granted, that the landlord was wrongfully deprived of his right of forfeiture and repossession and that the allowance of counsel fee to tenant's counsel was excessive. On the main questions the landlord undertakes to rest his appeal upon the interpretation of subdivision "n" of paragraph 5 of the lease and seeks a reversal of the decree with direction that the bill of complaint be dismissed; arguing to that end that the tenant was guilty of a willful breach of the pertinent lease provision, that no redress can be given the tenant without reading new terms into the contract and that the court of chancery has no authority to supplement the

provisions of the contract and no jurisdiction in the premises; that since the action was begun in the law courts it should properly remain there.

The evidence is contradictory on a number of salient points. On these contradictions the learned vice-chancellor resolved the facts in accordance with the tenant's version, and there is such substantial support in the evidence for the conclusion that we are not disposed to make conflict with the conclusions of the trial court in this respect. *Cartan* v. *Phelps, 91 N. J. Eq. 312.* It is not satisfactorily shown that the tenant was willful or malicious in his repeated failure to make rental payments on the due date. Nor do the provisions of paragraph 5n of the lease carry the indisputable significance that landlord reads therein. Paragraph 5 places upon the tenant fourteen sets of duties called "conditions and covenants," one of which is the obligation to pay rent at the times and in the manner otherwise set out in the instrument. Subdivision "n" first provides for a forfeiture at the option of the landlord if the tenant, after a written notice from the landlord delivered to the demised premises, shall, for a period of thirty days, fail to comply with any of these obligations. There the sentence ends. As a part of a new sentence is the provision that "no notice shall be required of the non-payment of the above-mentioned installments of rent which are due and payable on the first business day of each and every month, respectively," and "default in payment of rent" is therein distinguished from "a breach of any covenant or condition." The "default in payment of rent" apparently does not refer to the contents of paragraph 5a as that matter is by its own terms designated a "condition and covenant." A careful textual analysis inclines us to the belief that this proviso relates back to the rental obligations placed upon the tenant at the beginning of the lease and that it was not intended to, and does not, remove the necessity for notice preliminary to declaring a forfeiture for breach of the covenant contained in paragraph 5a. If this be so the landlord is not in position to declare a forfeiture for the written notice, to be followed by a thirty-days waiting period, was not given.

However, assuming that the proviso is to be construed in accordance with landlord's contention, we do not consider that his position is thoroughly established. On the disputed question of fact as to whether, after January first and prior to the declaring of the forfeiture, the landlord had made demand for the rent, the landlord testifies that he did, in .person, on the second day of January, make such demand of the tenant, and that the landlord then said to the tenant, "I will give you a few days." If that is the truth, it quite clearly appears to us that the landlord waived the payment of the January rent on the first business day of the month and that he, having thus expressly, by his own words, given such a waiver cannot be heard subsequently to declare a forfeiture · of the term of the lease because the rent was not so paid.

But we may further assume that the landlord did not make that statement. The tenant had, over a long period of time, consistently and persistently violated the mandate of the lease as to the time of rental payments without serious rebuke from the landlord. The landlord did, on June 17th, 1927, give the mild admonition contained in the letter of that date. The tenant testifies that on the receipt of that letter he went to the landlord and "explained to him that we were getting along much better, but it was still hard to have the rent promptly on the first day of the month and he said that it was all right and that he didn't want me to get behind in my rent, but as long as he got it during the month he was satisfied." We find no precise contradiction of that testimony in the record. The undisputed fact is that subsequent to that time over the year and a half preceding the attempted forfeiture the rent was never paid on the first business day of the month and frequently was not paid until well towards the end of the month. We consider that the testimony supports the conclusion that the landlord at no time after June 17th, 1927, admonished the tenant regarding the obligation to pay promptly on the first of the month or warned of any drastic action if such payment were not so made.

It is said in *Story Eq. Jur.* (*3d ed.*) § *1314:* "The general principle now adopted is, that, wherever a penalty is in-

serted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principle intent of the instrument, and the penalty is deemed only as accessory, and, therefore, as intended only to secure the due performance thereof, or the damage really incurred by the non-performance. In every such case, the true test (generally, if not universally), by which to ascertain, whether relief can or cannot be had in equity, is, to consider whether compensation can be made or not. If it cannot be made, then courts of equity will not interfere. If it can be made, then if the penalty is to secure the mere payment of money, courts of equity will relieve the party, upon paying the principal and interest;" and in section 1315: "The same doctrine has been applied by courts of equity to cases of leases where a forfeiture of the estate, and an entry for the forfeiture, is stipulated for in the lease, in case of the non-payment of the rent at the regular days of payment; for the right of entry is deemed to be intended to be a mere security for the payment of the rent," and in section 1316: "The true foundation of the relief in equity in all these cases is, that, as the penalty is designed as a mere security, if the party obtains his money, or his damages, he gets all that he expected and all that in justice, he is entitled to. And, notwithstanding the objections, which have been sometimes urged against it, this seems a sufficient foundation for the jurisdiction."

*Pom. Eq. Jur. 453* says: "Where a lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money." That doctrine is supported by *Bowser* v. *Colby, 1 Hare 109,* and *Hill* v. *Barclay, 18 Ves. Jr. 57, 58.*

Chancellor Runyon in *Thropp* v. *Field, 26 N. J. Eq. 82,* said: "If the defendant, by his acquiescence, induced the

complainants to believe that strict observance of their covenant to pay the rent, was not required by him, it is inequitable in him, under the circumstances, to seek to enforce the forfeiture. Besides, full compensation can be made to the defendant for the failure of which he complains, and under such circumstances equity will relieve."

The inherent jurisdiction in courts of equity to relieve against forfeiture, where equitable rights or equitable defenses are involved, has been frequently recognized by our court of chancery, particularly if the suits sought to be restrained is a summary proceeding, instituted but not determined, and without appeal on the merits. *H. Windholz & Son* v. *Burke, 98 N. J. Eq. 471; Henwood* v. *Jarvis and Schafer, 27 N. J. Eq. 247; Lincoln Furniture Co.* v. *Bornstein, 100 N. J. Eq. 78.* See, also, *Fleming* v. *Fleming Hotel Co., 69 N. J. Eq. 715; Fulton* v. *Greacen, 36 N. J. Eq. 216, 222; Bergman* v. *Fortescue, 74 N. J. Eq. 266, 269; Baldwin* v. *Van Vorst, 10 N. J. Eq. 577, 585; Grigg* v. *Landis, 21 N. J. Eq. 494, 501; Blake & Co.* v. *Smidth, 119 Atl. Rep. 306.* The facts in *McGann* v. *La Brecque Co., 91 N. J. Eq. 307,* cited *contra,* were quite different. There the landlord had brought summary proceedings to disposses the tenant after the end of the term; and after judgment of possession had been rendered in favor of the landlord the assistance of the court of chancery was sought to prevent an ouster. This court held that since there had been a judgment for possession and the correctness of the judgment was not disputed and there was no equitable right involved, chancery had no jurisdiction. An essential question under dispute in the case at bar is that of waiver and, although waiver is now recognized as a defense in the courts of law, it had its inception as a principle in equity and, as indicated above, is still recognized as a ground of equitable jurisdiction.

Without passing on the expressions in the authorities cited, beyond the holding herein, we conclude that the effort of the landlord to declare a forfeiture of the lease for non-payment of rent on the precise day fixed in the lease, coupled with the tenant's allegation, with supporting evidence, of waiver by

the landlord and reliance thereon by the tenant, to the latter's disadvantage, constitutes a proper field of chancery jurisdiction, and that chancery is not divested of its jurisdiction by the fact that the landlord has instituted and seeks to prosecute a summary disposses action in the district court. This result is reached by applying equitable principles to the facts of the case. It is quite unnecessary to read new terms into the contract. Under the circumstances of the case at bar, the aid of chancery, including its process of injunction, was properly sought and given.

It remains to mention the counsel fee which was allowed to counsel for the complainant in the sum of $1,000, and which we think should be reduced to $250.

This leads to an affirmance of the decree below, with a modification thereof as to the allowance of counsel fee. The record will be remitted to the end that the decree may be so modified.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.