14 N.J. Super. 484 (1951)
82 A.2d 476
DORA NEUSTADTER, PLAINTIFF,
v.
UNITED EXPOSITION SERVICE CO., A PARTNERSHIP, AND ROBERT C. KOURY, DOROTHY ROBINSON, BETTY CHARNEY, HARRY KATZ, MABEL KATZ, PAULINE ROSEN, SAMUEL KATZ AND HELEN S. KATZ, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 10, 1951.
*486 Mr. Herbert Horn, for plaintiff (Lloyd & Horn, attorneys).
*487 Mr. Harry Miller, for defendants Samuel Katz and Helen S. Katz.
Mr. Robert C. Koury, pro se, and for defendants Dorothy Robinson and Betty Charney.
HANEMAN, J.S.C.
The facts as recited in the complaint in connection herewith are as follows:
On August 11, 1947, plaintiff entered into an agreement with the individually named defendants which resulted in the creation of the defendant partnership under the title of United Exposition Service Company.
One of the terms of said agreement was as follows:
"8. The partners hereby agree to contribute EIGHT THOUSAND DOLLARS ($8,000) on the signing of this agreement in the percentages as hereinbefore set forth. The balance of the Eighty Thousand Dollars ($80,000), or any additional sums, shall be contributed in the same ratio by the partners and shall be paid by the partners to the partnership in such amounts as shall be required for the conduct and operation of the business of the partnership within ten days after a call has been made upon the partners by the General Manager of the partnership, with the written consent of Samuel Katz. In the event that any partner shall fail or refuse to make the contribution to the capital investment of the partnership in accordance with the call of the General Manager, then, in that event, at the option of the majority in investment of the remaining partners, the book value of the interest of such defaulting partner may be retained as the investment of said partner, and his interest in the partnership shall be in the ratio of the book value which the interest of said partner bears to the whole value; or the book value of said partner's interest may be paid to said partner and he be retired, and his share offered in ratio to the investment of the remaining partners to said partnership and in the event that any such remaining partners fail or refuse to accept such additional share in the ratio to which he is entitled within ten days after receiving notice from the General Manager, then said share of such defaulting partner may be distributed pro rata among other partners who desire to avail themselves of this privilege. In all cases of voting, the majority in investment shall govern and not the majority of the number of the partners. All calls shall have attached thereto a copy of the written consent by Samuel Katz. If any partner shall have deposited the necessary money of a contemplated call, then the notice to said partner shall be deemed to have been waived. A defaulting partner shall have no right to take a call after he has failed to avail himself of the call before the time specified herein *488 whether or not the proportionate share of the call allotted to him had been taken up by the other partners. In the event that any partner shall fail to take up any call, his interest in the partnership shall thereafter be fixed, and he shall not have the right to any proportionate share of any subsequent call that may be made."
On or about June 29, 1950, there was an alleged call for capital contribution of which plaintiff asserts she had no knowledge until July 24, 1950, at which time she forwarded her check for the amount of said call. This check was returned to her by Harry Katz by letter dated August 1, 1950, with the advice that in accordance with the above quoted section of the agreement, he, Helen Katz, Mabel Katz and Samuel Katz had decided to exercise their "option" to retain her interest.
Plaintiff seeks to enjoin defendants from so reducing her interest in the partnership and to force the defendants to accept her contribution. She contends that she is entitled to this relief since (1) she did not receive timely notice of the alleged call, and she immediately forwarded her contribution upon the receipt of actual notice thereof, and (2) the provisions requiring a contribution in accordance with the terms of the call were waived by the conduct of the parties.
The defendants, in addition to controverting the allegations of plaintiff and her conclusions as to the result thereof, affirmatively allege that this court has no jurisdiction over the partnership since there are no physical assets belonging to it within the State of New Jersey, and since two of the partners, i.e., Mabel Katz and Harry Katz, were not actually served.
At the outset it is admitted that the plaintiff did not tender her contribution until July 24, 1950, which was not within the time provided by the partnership agreement, if the notice to her was a call for capital.
It is admitted that no formal calls under paragraph 8 of the agreement were ever made prior to that of June 29, 1950. The initial and only contributions to capital were made in 1947 at irregular intervals, over a period of months, upon informal oral advice from Harry Katz that funds would be *489 required by specific dates. Between April 30, 1948, and June 25, 1950, on a number of occasions the partners advanced additional funds from time to time, which were considered loans, in spite of the fact that the full balance of $80,000 had not been contributed. Both Samuel Katz and Harry Katz stated that the partners made such advances as loans rather than capital contributions; that they were interested in a return of the money advanced to the partnership. At no time prior to December 19, 1949, were any requests, demands or notifications for loans given by letter. In each instance the partners had agreed mutually to advance the sums required and were importuned to forward the same by oral contact from Samuel Katz or Harry Katz. As a result of a meeting held in December, 1949, the partners agreed to loan additional sums to the partnership upon the basis of $2,000 per one-eighth interest. Samuel Katz and Harry Katz then mailed to each partner a letter dated December 19, 1949, a copy of which follows:
"I have discussed with Sam our financial status in light of our activities for the next few months, and we have determined that for purchases of additional stock and operating expenses, the company will require an additional $8,000 of capital. According to the capital ratio, I am, therefore, hereby requesting that you send $1,000 as your proportional share of this sum."
The form of this letter was patently, as admitted by Samuel Katz, "a call letter." Samuel Katz and Harry Katz, who prepared the letter, testified that the form was used to add a spur to a timely payment by the partners. They admitted that it was in the form of a call but that by agreement among the partners the payment was to be considered a loan. Koury, one of the partners, upon receipt of the communication, made inquiry of Samuel Katz as to whether the said letter reflected a change in attitude on the part of Harry Katz and Samuel Katz, or whether it was still to be regarded as a loan. On May 17, 1950, although Harry Katz and Samuel Katz then knew that additional funds to the extent of $1,500 per one-eighth interest would be required in the immediate future, *490 the sum of $2,000 per one-eighth interest was repaid to the partners. On June 25, 1950, a meeting of the partners was held, at which meeting there was a lengthy discussion concerning finances.
The testimony concerning any conclusion to make a call for capital at this meeting is unimpressive. The most that Harry Katz stated was that "I was of the opinion" that it had been concluded to make a call, and this in the face of the balance of his certain and positive testimony on other subjects. I cannot believe that with the apparent prior sharp divergence of opinion between Harry Katz and Samuel Katz and the other partners on the subject of whether money advanced should be regarded as loans or capital contributions, that there would not have been an acrimonious debate on this date as well, if it were decided to consider the advance a capital contribution. However, Harry Katz and Samuel Katz contend that on June 29, 1950, in spite of the fact that they had just repaid loans to the partners which they made no effort to retain as credit on account of capital contributions, they mailed a letter identical in form to the letter of December 19, 1949, which they now denominate a call for capital. The books of account and records were completely under the control of Harry Katz. It follows that he dictated the manner in which cash received from the partners was to be regarded. In December he designated the money received a loan. In June he designated the money received a capital contribution, in spite of the fact that Koury had been assured that the December 19, 1949, letter, identical in form with the June letter, was a request for a loan. Fifteen days after the alleged termination of the grace period for advancing the money, the plaintiff forwarded her share. No advantage was taken of this alleged tardiness until then. Never before had there been an advance by all of the partners on the date requested by Harry Katz and Samuel Katz.
The partnership apparently suffered no damage as a result of the tardy payment. The plaintiff states that she does not remember having received the controverted letter. I am not *491 satisfied that the plaintiff actually received and read the call letter of June 29, 1950. Unless she did so receive and read said letter, she had no notice. The agreement does not specifically authorize the mailing of a call notice. The agreement makes no provision for the manner in which a call shall be made, but merely provides that a contribution shall be made "within ten days after a call has been made."
The word "call" as it is used in the partnership contract, connotes or is synonymous with "notice." Not only does the agreement require the "written consent of Samuel Katz," but the interpretation placed on this phraseology by the conduct of Harry Katz and Samuel Katz in appending the signature of the latter to the letter which made the demand for payment exhibits the intent that this word be used in that sense.
To call has been defined as "to demand payment of, especially by formal notice." Keyes v. Kimmel, 9 N.J. Misc. R. 604, 155 A. 19 (Sup. Ct. 1931); 109 N.J.L. 268, 160 A. 684 (E. & A. 1932).
The cases cited by counsel involving a call by a corporation for payment of stock subscriptions are not especially applicable for the reason that the call there may designate one of three things: (1) the order of the board of directors by which an unpaid stock subscription becomes payable; (2) this order and the notice thereof, or (3) the time when payment is due. Fletcher Cyclopedia Corporations, vol. 4, p. 509.
A failure on the part of one subscriber to corporate stock to respond to a call normally results merely in a liability to stand suit for the amount thereof and to respond to the extent thereof. Even under such circumstances, the courts have held, in certain cases, that actual notice must be received. Braddock v. Philadelphia, Marlton & Medford R.R. Co., 45 N.J.L. 363 (E. & A. 1883).
Here the failure of a partner to respond to a call might result in a forfeiture, i.e., the automatic reduction of his proportionate interest in the partnership and an enhancement of the interest of the other partners therein.
*492 There was no special method set forth in the contract for the giving of notice. Actual notice of the call, whether by writing or orally, is implicit in its terms. Such notice must have actually been brought to the attention of plaintiff to result in a failure on her part to respond thereto by timely payment. Fritz v. Pennsylvania Fire Ins. Co., 85 N.J.L. 171, 88 A. 1065 (E. & A. 1913).
The effect of the reduction in interest of plaintiff is a forfeiture. In Rankin v. Homestead Golf & Country Club, Inc., 135 N.J. Eq. 160, 37 A.2d 640 (Ch. 1944), the court said at page 165:
"The common and general definition of the word `forfeit' is `lost by omission or negligence or misconduct.' It is in this general sense that the word `forfeiture' is used when it is said that equity will not actively lend its aid to enforce a forfeiture, or that equity will relieve against unjust forfeitures. A forfeiture is in the nature of a penalty for the doing or the failure to do a particular thing, e.g., using leased premises for a purpose prohibited by the lease, failing to pay rent, and the like. To incur a forfeiture is to fail to keep an obligation."
Penalties and forfeitures are not favored in equity, which court will relieve against them. Grigg v. Landis, 21 N.J. Eq. 494 (E. & A. 1870).
Timely advantage must, in any event, be taken of violation of a contractual provision resulting in a forfeiture or the party for whose benefit the provision is made will be deemed to have waived the same. Where a party to a contract has consistently acted in such a way as to indicate to his co-contractor that he does not intend to hold the latter to a particular provision of a contract, he is taken to have waived his right to enforce that provision. Lane v. Blackwood Estates, 104 N.J.L. 152, 138 A. 871 (E. & A. 1927); Schlegel v. Bott, 93 N.J. Eq. 607, 117 A. 605 (E. & A. 1922); Sparks v. Lorentowicz, 106 N.J. Eq. 178, 150 A. 351 (E. & A. 1929).
Under all of the facts here present, it is clear that the provision of which some of the defendants seek to take *493 advantage results in a forfeiture of a portion of plaintiff's interest in the partnership. As above stated, there was absent any showing of a resulting damage to the partnership from her failure to comply. Not until over one month after the due date of the payment from plaintiff, and then not until actual receipt thereof was advantage taken of the contractual provision. The section here in question was a means to force prompt payment or performance. The performance is the principal interest of the contract and the penalty is only accessory. Compensation or compliance has been made or had and equity will grant relief. Sparks v. Lorentowicz, supra. The entire course of conduct in connection with calls for capital contributions and loans by the individual partners exhibited a waiver of the provision of which advantage is now sought to be taken. Each partner stands in a fiduciary relationship to every other partner. Sonek v. Hill B. & L. Ass'n., 138 N.J. Eq. 534, 49 A.2d 303 (Ch. 1946), affirmed 140 N.J. Eq. 108, 52 A.2d 852 (E. & A. 1947). This is most especially true of the defendants Samuel Katz and Harry Katz and the latter's wife, who seek to take advantage of plaintiff's forfeiture. The two former were the actual operators and managers of the business; in their hands resided the financial direction of the corporation and the authority to call upon their co-partners for additional funds.
Under all of the circumstances. I find that the plaintiff did not receive actual timely notice, and that the parties waived the provisions of paragraph 8 of the contract; that there was a waiver of the right to forfeit, and that it would be inequitable to permit the action complained of by plaintiff to stand. The defendants who contest this action object in any event to an injunction against the partnership, since all of the defendants were admittedly not personally served.
Rule 3:4-4, provides:
"Service shall be made as follows: * * *
(e) Upon a partnership by serving, in the manner prescribed by paragraph (a), a partner, a managing or general agent or an officer."
*494 The plaintiff asserts that under the above quoted rule, binding service has been made upon the partnership as an entity because one or more partners were personally served.
The courts of this State have held that service upon one of two partners in an action seeking to hold them jointly is personally binding only upon the partner served, and that a statute making a judgment binding personally upon the unserved partner is violative of the 14th Amendment of the United States Constitution as construed in Pennoyer v. Neff, 95 U.S. 714 (1877); Blessing v. McLinden, 81 N.J.L. 379, 79 A. 347 (E. & A. 1910). See also Maglo v. Weaver, 11 N.J. Super. 32, 77 A.2d 499 (App. Div. 1950). It may well be that service on one partner in an action seeking to hold the partnership and the individual partners jointly may result, in specific projected facts, in a valid judgment both against the partner personally served and the partnership, to the extent of the partnership assets. Maglo v. Weaver, supra.
It becomes necessary, therefore, to ascertain whether the relief here demanded against the partnership could be granted solely against it or would, of necessity, have to be granted against the individuals composing the partnership to be efficacious.
In Finston v. Unemployment Compensation Commission, 132 N.J.L. 276, 39 A.2d 697 (Sup. Ct. 1944), the court said:
"But whatever the sense in which the word is used, partnership is clearly something more than just one individual added to other individuals; and the fact that the aspects of it vary with varying circumstances makes it necessary, in each instance, to study the context and function of the word. So, too, `entity' is a word with elastic application. It is defined as something which has reality and distinctness of being; but that reality and distinctness may be either in fact or in thought. (Webster's New International Dictionary.) Enough has been said to show that while a partnership does not have a separate existence for all purposes and is by no means of such detached individualism as is a corporation (although even a corporate structure may disintegrate into elements of flesh and blood when subjected to certain equitable incidents, Telis v. *495 Telis, 132 N.J. Eq. 25), nevertheless in divers respects a partnership may, in this jurisdiction, come within the legal conception of a distinctive being, viz., an entity." (Affirmed, Naidech v. U.C.C. of New Jersey, 134 N.J.L. 232, 46 A.2d 734 (E. & A. 1946)).
A partnership cannot function as a separate entity in the manner in which plaintiff seeks to obtain relief. Unlike a corporation, it has no existence separate from its component members. It must function through the actions of the partners. The partnership as an entity could not refuse to accept the check of plaintiff or act to reduce her interest therein. These actions must be taken by the individuals composing said partnership. To be effective, any restraint would have to be against the individuals.
This court acts in personam in issuing an injunction, Elgart v. Mintz, 123 N.J. Eq. 404, 197 A. 747 (Ch. 1938); Buchman v. Smith, 136 N.J. Eq. 246, 41 A.2d 262 (Ch. 1945), and will not grant an injunction against a defendant not personally served. Wilentz v. Edwards, 134 N.J. Eq. 522, 36 A.2d 423 (E. & A. 1943).
An injunction against United Exposition Service Company would of necessity be an injunction against the unserved partners jointly. For the purpose of the relief here sought, the partnership has no separate, detached existence.
To accede to plaintiff's request in this particular would be to circumvent the provision of due process clause of the United States Constitution by indirection, and could result in the entry of a judgment in personam against a defendant not actually served. Since this is an action in personam, the court has no jurisdiction over the unserved partners and hence cannot enjoin the partnership as an entity.
Consistent with the foregoing, relief will be granted against the individual defendants served, but denied as against the partnership as an entity.