**McKENNA et al. v. AUSTIN.**
No. 7979.

United States Court of Appeals for the District of Columbia.

Decided Feb. 11, 1943.

Mr. James F. Reilly, of Washington, D. C., with whom Messrs. William E. Leahy and Eugene B. Sullivan, both of Washington, D. C., were on the brief, for appellants.

Mr. Irvin Goldstein, of Washington, D. C., for appellee.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Plaintiffs' suit was for damages for personal injuries incurred by Helen H. Mc-Kenna in a collision of a taxicab in which she was a passenger with an automobile operated by defendant's employee. The taxicab was owned by Independent Taxi Owners Association and William L. Driscoll (herein designated together as Independent), and was operated by their employee. The husband's claim is on account of medical and hospital expenses and loss of consortium and services. Defendant denied his employee was negligent. He alleged that the taxicab was driven carelessly, at excessive speed, and this was the sole cause of the injuries. A further defense was that plaintiffs had made full accord and satisfaction with Independent by a release which is claimed to bar this action. The sum paid in compromise was $3,000.

In this state of the pleadings defendant moved for summary judgment, which the court granted, relying upon Kaplowitz v. Kay, 1934, 63 App.D.C. 178, 70 F.2d 782. The plaintiffs appeal.

The release is set forth in the margin.[1] The plaintiffs first covenant not to sue Independent on account of injuries or losses resulting from the collision. The instrument then purports to reserve any cause of action against defendant and his employee and recites that it "is intended to be and is a complete discharge of any and all liability" of Independent.

The sole question is whether this agreement operated to discharge the defendant. He stands on the more generally prevailing rule,[2] adopted in Kaplowitz v. Kay, that

[1] "Know All Men By These Presents That the undersigned in consideration of the sum of Three Thousand ($3,000.00) Dollars to us in hand paid by Independent Taxi Owners Association, Inc., a body corporate, and William L. Driscoll, receipt whereof is hereby acknowledged at and before the signing and sealing of these presents, do hereby covenant and agree to and with said Independent Taxi Owners Association and William L. Driscoll that the undersigned will not commence, maintain or prosecute any action at law, or otherwise, against said Independent Taxi Owners Association and William L. Driscoll by reason of, or arising out of, the certain accident· * * * or on account of any injuries, losses, or expenses sustained by the undersigned or either of them, or upon any other cause of action growing out of or in anywise connected with the collision aforesaid, and these presents may be pleaded as a defense to any action or other proceeding which may be brought, instituted or taken by the undersigned, or either of them, against said Independent Taxi Owners Association and William L. Driscoll, in breach of this covenant. This instrument is not maintained as, and shall not be deemed a release of any cause of action that the undersigned may have against Theodore Austin and Hezekiah Austin but is intended to be and is a complete discharge of any and all liability on behalf of said Independent Taxi Owners Association and William L. Driscoll, or either or both of them of any and all claims of the undersigned growing out of or in anywise connected with the aforesaid collision."

[2] See Prosser, Torts (1941) § 109, at 1108; Harper, Torts (1933) § 302, n. 63; 1 Cooley, Torts (4th ed.1932) § 83; notes (1927) 50 A.L.R. 1057, 1060; (1930) 66 A.L.R. 206; (1936) 104 A.L.R. 846; (1940) 124 A.L.R. 1298; (1941) 134 A.L.R. 1225, 1232.

release of one joint tortfeasor discharges the others and insists it is applicable in the present facts.

Plaintiffs say the rule is not applicable. They urge that the instrument is not a release from substantive liability but is merely a covenant not to sue. They rely upon authorities which hold that such a covenant does not effect discharge of the co-tortfeasors,[3] and that an agreement which reserves rights against them is such a covenant.[4] Plaintiffs also insist that defendant and Independent were not joint tortfeasors, but acted independently. They say the court should have taken evidence and decided this question as a matter of fact before it construed the agreement. In their view the only effect proper to be given the settlement is to apply the amount received to reduce pro tanto the total damages.

The facts in this case and in Kaplowitz v. Kay are similar in that the plaintiff in both was a passenger in an automobile which collided with another, settled with one of the wrongdoers, and then sued the remaining one. On this showing the court held the latter was discharged.

The basis and scope of the decision are ambiguous. It does not appear whether joint or independent tortfeasors were involved. The opinion does not set forth the terms of the agreement. It makes no point of any distinction between a release and a covenant not to sue or between joint and independent tortfeasors. There is language which may indicate the plaintiff accepted the amount paid as full satisfaction for the total injury.[5] This could be construed as pivoting the discharge upon the parties' intention. Other statements, however, and

authorities quoted appear to put the matter more broadly, so that whenever the negligence of two or more persons combines to produce a single injury, the release of one "ipso facto" discharges the others. If this is the effect of the decision, the amount received, its relation to the total damage done, and the parties' intention to retain rights against the other wrongdoers would be immaterial, as would any difference between joint and independent tortfeasors. Because of its ambiguity the plaintiffs say the Kaplowitz case is not controlling in this one.

We agree with defendant that distinction between a "release" and a "covenant not to sue" is entirely artificial. When one surrenders all means of enforcing his claim against another and does this in settlement of a dispute and threatened litigation, he effectually extinguishes the underlying right. Thereafter, if it is right at all, it is right without remedy. We know that courts of highest authority have recognized the existence of such "rights" in exceptional situations involving particularly matters of international adjustment and of governmental credit.[6] Absence of means of compulsion against the sovereign may make judicial assertion that rights exist against it, without other remedy, an appropriate sanction in such cases and possibly in others. But for the ordinary run of private rights and private litigation, the idea of right without remedy is hardly a working hypothesis. Everyday law is predicated upon the courts' capacity to do something about disputes. When one wholly surrenders his recourse to the courts in such matters, he insulates his adversary against his claim as effectually as when in so many words he releases him.

[3] Pacific States Lumber Co. v. Bargar, 9 Cir., 1926, 1 F.2d 335, 337; Fagerberg v. Phœnix Flour Mills Co., 1937, 50 Ariz. 227, 71 P.2d 1022; Missouri Pacific R. Co. v. Hunt, 1936, 193 Ark. 175, 98 S.W.2d 74; McKay v. Pacific Bldg. Materials Co., 1937, 156 Or. 578, 68 P.2d 127.

[4] Carey v. Bilby, 8 Cir., 1904, 129 F. 203; The Adour, D.C.D.Md.1927, 21 F.2d 858, 861; Colby v. Walker, 1934, 86 N.H. 568, 171 A. 774, 104 A.L.R. 841; Black v. Martin, 1930, 88 Mont. 256, 292 P. 577; Prosser, Torts (1941) § 109, at 1109; Harper, Torts (1933) § 302, n. 65; notes (1927) 50 A.L.R. 1057, 1072, 1081; (1930) 66 A.L.R. 206, 209; (1936) 104 A.L.R. 846, 852; (1940) 124 A.L.R. 1298, 1306, 1309.

[5] "It is disclosed that the plaintiff asserted a claim for damages against the drivers of both cars, and that the insurance company carrying insurance for Acrouri had settled the claim of the plaintiff against Acrouri by the payment to plaintiff of $500 in full satisfaction of the claim." 63 App.D.C. 178, 70 F.2d 782. Cf., also, the quotation from Gunther v. Lee, 1876, 45 Md. 60, 67, 24 Am. Dec. 504, set forth in the dissenting opinion herein.

[6] Cf. Perry v. United States, 1935, 294 U.S. 330, 360, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335; Compania Naviera Vascongado v. S. S. Christina, [1938] A.C. 485, (1939) 39 Col.L.Rev. 510.

The distinction gains no strength from the conflict which exists concerning what is a release and what is a covenant not to sue. Some courts regard the matter as one of intention to be gathered from the whole instrument.[7] Giving lip service to the rule, they avoid its effects when the purpose to reserve rights against the wrongdoers not released can be found, as generally it may be. Specific terms of release give way before a clause expressly reserving such rights or other indication of like intent.[8] In this view the present instrument would be merely a covenant not to sue.

Other courts adhering to the distinction refuse to permit such a clause to overcome express words of release and allow escape only when the formula is limited to covenanting not to sue.[9] To the extent that they decline to give effect to the clause they disregard the parties' intention, as would a court refusing entirely to recognize the distinction. In this view the agreement now in question would be a release and would discharge defendant by operation of law.

In determining the character as well as the effect of such an agreement, we are unwilling to concede so much potency to mere verbalism. The matter does not require the formalism of conveyancing. Whether words of "release" or of "covenant" are used, the effect should be the same. Wide acceptance of the distinction, notwithstanding its want of substance, and the decisions that in applying it intention should control, point the way to reexamination of the rule and its foundations.

The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss.[10] Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability.

It is a first principle that liability in tort is several, not joint, however many participate in inflicting the wrong and whether they act separately or in conjunction.[11] With this principle the rule is at war. Their essential inconsistency would seem apparent. The prevalence of the rule, however, shows that it is not evident. There is occasional explicit recognition, as in Black v. Martin, 1930, 88 Mont. 256, 292 P. 577.[12] That this is not more general accounts, perhaps, for the rule's retention and for the artificial method of escape taken in the covenant not to sue. Escape is proper, notwithstanding it is partial. It should be total, and in forthright fashion.

The foundations of the rule are in confusion. By and large they come down to two reasons, which in fact are separate and independent, applicable with a single exception in different situations. Yet generally they are made to overlap in a confused admixture and indiscriminate application. Neither sustains the rule, except in the single instance to be noted.

As they are commonly stated, the reasons are: (1) that there is but a single

---

[7] E. g., Carey v. Bilby, 8 Cir., 1904, 129 F. 203; Greenhalch v. Shell Oil Co., 10 Cir., 1935, 78 F.2d 942; Cowles v. Independent Elevator Co., 1937, 22 Cal. App.2d 109, 70 P.2d 711; Armieri v. St. Joseph's Hospital, 1936, 159 Misc. 563, 288 N.Y.S. 483; Bossong v. Muhleman, 1938, 254 App.Div. 738, 3 N.Y.S.2d 992; Safety Cab Co. v. Fair, 1937, 181 Okl. 264, 74 P.2d 607; Farrell v. Kingshighway Bridge Co., Mo.App.1938, 117 S.W. 2d 693.

[8] See note 4 supra.

[9] See note 2 supra.

[10] Under the generally prevailing rule that contribution will not be allowed among joint tortfeasors [Prosser, Torts (1941) 1111; Harper, Torts (1933) § 303], repudiated recently in this court. George's Radio, Inc., v. Capital Transit Co., 1942, 75 U.S.App.D.C. 187, 126 F.2d 219.

[11] Prosser, Torts (1941) § 109; 2 Williston, Contracts (1936) § 338A.

[12] Louisville Gas & Electric Co. v. Beaucond, 1920, 188 Ky. 725, 224 S.W. 179, 186; Blackmer v. McCabe, 1912, 86 Vt. 303, 85 A. 113; cf. Page v. United Fruit Co., 1 Cir., 1925, 3 F.2d 747, 752; Young v. Anderson, 1921, 33 Idaho 522, 196 P. 193, 50 A.L.R. 1056; Murphy v. Penniman, 1907, 105 Md. 452, 66 A. 282, 289, 121 Am.St.Rep. 583.

right and a single correlative obligation, with only one cause of action, though this unitary nexus attaches to several persons as obligors; (2) there is merely a single and entire injury, though it is caused by the acts of a number of persons, whether acting separately or in conjunction. From each it is concluded the release of one obligor discharges the others.

Logically this consequence follows from the first reason without regard to whether the settlement is in fact full reparation for the injury or is intended to be so received. It results from the assumed indivisibility and entirety of the nexus binding the wrongdoers to the injured person. Being entire the liability must exist or vanish in entirety, notwithstanding its attachment to more than one obligor. Whatever extinguishes it as to one, therefore, whether judgment, settlement or other bar, does so as to all.

Applied independently of the first reason, the second one would dictate the same result only when full satisfaction for the injury is made. The crux of discharge therefore would be whether the amount paid for the release is in fact adequate or is so accepted for this purpose. Entirety of injury, without entirety of obligation, would furnish no foundation for the discharge, except when the release is made for total reparation.

As it is usually applied, however, the second premise is merely a confused reflection of the first. From entirety of injury entirety of obligation is assumed to exist, the two being identified. When this is not done, the same end results from assuming, contrary to the evident and often the incontrovertible fact, that the claimant intended to accept the settlement as satisfaction for the entire injury rather than merely for the liability of the person released.[13] There is no inquiry into the adequacy of the amount paid, the scope of the injury and amount of the damages, or the relation between the two, except pos-

sibly where discharge is made to turn upon intention. The assumption therefore practically amounts to a presumption of law, and the second reason becomes in effect merely another way of stating the first.

One may wonder how the idea of joint liability obtained a beachhead in the law of torts, more that it consolidated this position. The explanation may be in a transfer of conceptions of liability from relations in property and contract. Joint obligations have their roots in the old soil of joint estates. Through them, and tenancy in common, the common law broke out from its accustomed one-man mold.[14] In doing so it added the mysteries of survivorship to those of seisin, achieving varied degrees of unity in severalty and severalty in unity. Joint estates were productive of joint rights and obligations, which partook of the nature of their source. Survivorship gave unity to right and to obligation for enforcement and discharge. For these purposes all were one and one was all.

This pattern set the sage for transfer of the metaphysics of estates to the law of obligations independent of property. With the emergence of contract came an accretion of ideas of joint right and liability from the law of property.

Entirety and survivorship of right remain useful conceptions, both as incidental to ownership of property and independently of it. Applied to obligations, however, they have proved inconvenient in the separate applications. Until Mansfield's time[15] and later, partners hindered or defeated creditors by pleas of nonjoinder, notwithstanding each was bound to his last farthing to pay the debt and could be made to do so if all were joined and served. Judgment merged joint obligation into several liability. So with other joint obligors. This mixture of unity and severalty was a highly convenient shield for holding off the day of judgment and inconvenient payment.

---

[13] As when the release or covenant contains an explicit reservation of rights against tortfeasors not parties to it. When this is not present, the very fact that the plaintiff brings the suit is in itself evidence that he did not intend the settlement to be full satisfaction for the injury and also that the rule of discharge has operated as a trap for him.

[14] Cf. 1 Pollock and Maitland, History of English Law (2d ed.1923) 407; 3 Holdsworth, History of English Law (1934) 457, 460, 463; Smith, Legal Personality (1928) 37 Yale L.J. 283, 287-89.

[15] In Rice v. Schute, 5 Burr. 2611 (1770), it was held that advantage could be taken of nonjoinder of a partner only by plea in abatement naming the absent one.

The common law found means, in part, to avoid these barriers.[16] American courts early added others.[17] Then came the statutory revolution.[18] Joint right remained joint. Joint obligation became "joint and several." Unity of obligation departed the legal scene. With it went the foundation of unitary discharge, in contract as in other forms of joint obligation.

But the foundation did not take with it all of the superstructure. Vestigial corollaries of the old law remain. Entirety of obligation was the basis for requiring joinder to secure enforcement and for unitary discharge by judgment or release. That obligations should remain joint for compromise so long after they have become several for suit is a survival strange enough in contract.

It is more so in tort. Tortfeasors come severally into court, however many may be brought in together. It has not been otherwise in the common law. Whether they act independently or in concert, the nexus of liability between them and the person their acts combine to injure is not and has not been entire. Each is bound to him separately and for the full injury. The rule of joint discharge therefore has never had true foundation for tortfeasors in the conception of unitary obligation.

■■ Nor has it basis ordinarily without that in the fact of single injury. It is no defense for wrongdoers that others aided in causing the harm. Each is responsible for the whole. But that does not mean the injured person may have more than full satisfaction, except as punitive damages. He has no right to make profit from his harm because several share in causing it. Accordingly when one makes full reparation for all the loss, the others are discharged from liability to the injured person, though not, under our recent ruling in George's Radio, Inc., v. Capital Transit Co., 1942, 75 U.S.App.D.C. 187, 126 F.2d 219, from liability to each other for contribution. Where contribution cannot be had between "joint" tortfeasors, they are relieved from further liability of any kind. The second premise therefore supplies a basis for the rule, but does this only when the facts support its application, that is, when the settlement is a complete indemnity.

■ The difficulty is in how it shall be determined whether full indemnity has been received. This will vary with circumstances. Facts and intentions, rather than presumptions from the mere fact of settlement, should control. When damage to property is measurable with fair accuracy and has reasonable relation to the damage shown, the amount paid may be conclusive. With personal and other injuries less readily reduced to cash value, the difficulty may be greater. Ordinarily the claimant will not secure complete indemnity from one or less than all, unless the others are judgment proof. Such a settlement usually would not be advantageous to the settling wrongdoer. The presumption of fact therefore generally would be against full satisfaction and discharge. It would seem conclusive when rights against those not released are reserved explicitly or intention otherwise appears to keep these claims alive. Whether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. If however the agreement's terms leave no room for doubt, the decision should be made as a matter of law.

■ In summary, there is no support for the rule of unitary discharge in the notion of entirety of obligation among joint tortfeasors. There is foundation in singleness of the injury, when complete indemnity has been made. We adhere to the rule in that circumstance. We repudiate

16 Outlawry was, perhaps, the earliest escape. Cf. Hall v. Lanning, 1875, 91 U. S. 160, 161, 23 L.Ed. 271; Blessing v. McLinden, 1911, 81 N.J.L. 379, 79 A. 347, 35 L.R.A.,N.S., 312.

17 One escape treated the return non est inventus as the equivalent of outlawry. See Tappan v. Bruen, 1809, 5 Mass. 193; Olcott v. Little, 1838, 9 N.H. 259, 32 Am.Dec. 357; Nathanson v. Spitz, 1895, 19 R.I. 70, 31 A. 690.

18 See 2 Willison, Contracts (1936) § 329; for discussion of cases in jurisdictions having statutes, see notes (1927) 50 A.L.R. 1057, 1079; (1920) 66 A.L.R. 206, 210; (1936) 104 A.L.R. 846, 855; (1940) 124 A.L.R. 1298, 1308; Eberhart, The Uniform Joint Obligations Act: Effect on Existing Law (1928) 13 Corn. L.Q. 640.

Cf. also Warren, Corporate Advantages Without Incorporation (1929) c. 3, pp. 141, 151-233; Crane and Magruder, Cases on Partnership (1st ed.1923) notes pp. 307, 311, 313, 316.

it in others. Whether or not the settlement amounts to full reparation is to be determined, not merely from the fact of settlement, but as the facts of the particular situation dictate. *Partial satisfaction taken in compromise and release of liability of one or some of the wrongdoers does not discharge the others.* In the present case, the agreement with Independent expressly reserved the plaintiff's rights against the defendant. He therefore was not discharged. It is not material whether the instrument be considered a release or a covenant not to sue.

What has been said is sufficient to dispose of this appeal. There is however one other factor which has bearing on the issues now here and which will be presented directly in the cause, if the further proceedings result in a judgment for the plaintiffs. This relates to allowance of credit for the amount Independent has paid and the manner in which the credit should be made.

 Plaintiffs concede that credit should be allowed and this is implicit in what we have said.[19] However it has been suggested that George's Radio, Inc., v. Capital Transit Co., permitting contribution among co-tortfeasors, raises a dilemma in this respect which militates against repudiation of the rule of Kaplowitz v. Kay. As has been said, a primary reason for discarding that rule is to avoid its stifling effects upon compromise and settlement.[20] Independent's compromise must be given effect to relieve it from all liability, whether to plaintiff directly or indirectly through contribution; otherwise persons in similar position will not be likely to make compromises. But if the settlement is given such finality, the defendant would be deprived of his right of contribution, in case the judgment against him exceeds twice the sum paid in compromise—and by an agreement to which he is not a party. The alleged dilemma therefore is between depriving the settlement of its necessary finality and depriving the defendant of his right of contribution. It is urged that either alternative furnishes reason for not departing from the rule of Kaplowitz v. Kay.

We do not find the fancied obstacles forbidding or persuasive. The problem is to blend the themes of compromise and contribution, maintaining the essential integrity of each as far as possible. It is not incapable of solution. We need not determine the matter now decisively, since neither the question of credit nor one of contribution is immediately before us. But to refute the contention that these considerations dictate continued adherence to Kaplowitz v. Kay, we may suggest the obvious possible solutions.

 We agree, for the reasons already stated, that the settlement should be final, both to forestall further recovery by the injured person and to preclude contribution. So long as the judgment is for less than twice the amount of the settlement, there is no real difficulty. In that case the wrongdoer who settles will pay more than half the total sum due the claimant. By settling with the injured person he does not surrender his right of contribution and the settlement should not give the other wrongdoer an advantage. Consequently he should recover from the latter the amount necessary to equalize their payments.

When however the judgment exceeds twice the settlement, contribution operates in favor of the defendant. If the settlement is given finality, as we think should be done, there are at least two possible solutions. One would require the defendant to pay the full amount of the judgment after deducting the sum paid in compromise. This would deprive him of a portion of his right of contribution, amounting to the sum necessary to equalize his payment with the settling wrongdoer's. Modifying the right of contribution to this extent might be justified as a sort of penalty for refusing to settle and for causing the plaintiff the additional expense and delay involved in litigation. The effect might be salutary further to encourage settlements and discourage litigation.

---

[19] Adams Express Co. v. Beckwith, 1919, 100 Ohio St. 348, 126 N.E. 300; Black v. Martin, 1930, 88 Mont. 256, 292 P. 577; Young v. Anderson, 1921, 33 Idaho 522, 196 P. 193, 50 A.L.R. 1056; Farrell v. Kingshighway Bridge Co., Mo. App.1938, 117 S.W.2d 693.

[20] It is debatable whether compromise may be desirable in this situation under modern conditions. Cf. James, Contribution Among Joint Tortfeasors: A Pragmatic Criticism (1941) 54 Harv.L.Rev. 1156, 1169; Edgerton, J., dissenting in George's Radio, Inc., v. Capital Transit Co., 126 F.2d at page 223. But the decision in George's Radio, Inc., v. Capital Transit Co. commits us to the view that these settlements should be encouraged.

The principal objection to this solution would lie in the facts that the defendant is not a party to the compromise, has no control over it, and therefore should not be adversely affected by it. If these considerations are regarded as outweighing those favoring the modification, an alternative solution is available by placing upon the plaintiff, the injured person, the burden of the loss which otherwise would fall upon the defendant. This could be accomplished by fixing the credit at half the amount of the judgment whenever the latter is more than twice the sum paid in settlement.

This would result in cutting down somewhat the total amount of the claimant's recovery. But the reduction would be a direct result of his own act in accepting less than half of the total recoverable damages in settlement with the compromising wrongdoer. From his viewpoint acceptance of such a fractional loss would be incomparably preferable to the entire loss of right against the wrongdoers who do not settle which follows from application of the rule of Kaplowitz v. Kay. It is difficult to understand the logic which characterizes such a partial scaling down of the recovery as unjust and at the same time gives approval to the total annihilation of recovery the rule of that case brings about.

We need not discuss the matters of credit and contribution further. What we have said is not for the purpose of deciding these questions in advance of presentation or of foreclosing other possible solutions.[21] Final consideration and determination may be left for the time when these issues are presented immediately. But we have felt forced to refer to them by the argument we think entirely untenable, that the decision in George's Radio, Inc., v. Capital Transit Co. places serious, if not insurmountable, obstacles in the way of repudiating Kaplowitz v. Kay. In many cases, as has been shown, no difficulty whatever will arise. The rights of finality in compromise and of contribution will blend with complete harmony. In others, modification to a limited extent may be required in the rights of one or another party. But whatever the modification it is preferable to the total loss produced by the old rule.

■■■ The majority are not unmindful of the force of stare decisis. But it is not a doctrine of mortmain. It does not exclude room for growth in the law, nor does it require adherence to a highly technical rule which, at its inception, was at war with the elementary nature of the substantive liability to which it was applied; which has been maintained by lip service, while being chipped away in its substantive effect through multiplying though equally artificial distinctions; and which has found hold in our own law by only a single and a highly ambiguous decision.

To apply Kaplowitz v. Kay in the facts of this case would not be to apply stare decisis. Here the wrongdoers acted independently, not jointly; there was express reservation of rights against the wrongdoers not released; and, consequently, it affirmatively appears that the settlement was not made or accepted as full satisfaction for the whole injury. None of these things can be said with certainty to be true of Kaplowitz v. Kay. To assume that all of them were involved and therefore the rule of the case applies here is an expansion of its doctrine, not a following of the beaten path.

But in our opinion the rule had no sound basis for application, whatever may have been the facts to which it was applied. We think it is anomalous, for the reasons which have been stated, is unjust in its consequences, and should be laid to rest.

Accordingly the judgment is reversed and the cause is remanded to the District Court for further proceedings.

Reversed and remanded.

---

21 For various methods of dealing with the matter, see the discussions in James, Contribution Among Joint Tortfeasors: A Pragmatic Criticism (1941) 54 Harv. L.Rev. 1156, 1160, n. 12; James, Replication (1941) 54 Harv.L.Rev. 1178; Gregory, Contribution Among Joint Tortfeasors: A Defense (1941) 54 Harv.L. Rev. 1170, 1172-3, ns. 2-4; Gregory, Rejoinder (1914) 54 Harv.L.Rev. 1184; Gregory, Contribution Among Tortfeasors: A Uniform Practice, 1938 Wis.L. Rev. 365, 391, 400, § 8; Larson, A Problem in Contribution: The Tortfeasor with an Individual Defense Against the Injured Party, 1940 Wis.L.Rev. 467; Legis. (1936) 24 Calif.L.Rev. 546, 702; Legis., 1938 Wis.L.Rev. 580, 586; Legis. (1941) 41 Col.L.Rev. 171, 172, n. 11; Bohlen, Book Review (1936) 45 Yale L. J. 1528, 1531.

STEPHENS, Associate Justice (dissenting).

I am unable to concur in the decision of this case. The appeal is from a summary judgment entered by the District Court of the United States for the District of Columbia against the appellants Helen H. and Royal T. McKenna, husband and wife, plaintiffs below. The appellants filed suit against the appellee Thomas Austin for damages alleged to have resulted from injuries received by the appellant Helen H. McKenna on March 16, 1939, through the negligence of the appellee in the operation of a taxicab which collided at the intersection of 24th and S Streets, N.W., in the District of Columbia, with another taxicab in which Mrs. McKenna was a passenger. She sought damages in the sum of $50,000; Mr. McKenna, upon allegations that, as a result of her injuries, he had been required to incur medical and hospital expenses for his wife and that he had lost and would lose her consortium and services, asked damages in the sum of $5,000. The appellee's answer to the appellants' complaint denied the allegations thereof and also alleged that while the appellee's taxicab was being carefully operated at the time and place mentioned, the one in which Mrs. McKenna was riding as a passenger, owned by the Independent Taxi Owners Association and one William L. Driscoll, was negligently operated by them and that on that account, and not by reason of any act or failure on the part of the appellee, the collision and any damage to Mrs. McKenna occurred. By way of further defense the appellee set forth that, prior to the commencement of the action, the appellants had accepted from the Independent Taxi Owners Association and William L. Driscoll, in full accord and satisfaction of the cause of action and claim for which the suit was brought, the sum of $3,000, and in consideration thereof had executed a release which is a bar to the present suit. After the issues had been thus joined the appellee filed a motion for a summary judgment in his own favor and against the appellants upon the ground that the release referred to disclosed release of a joint tort-feasor and thereby released the appellee as a matter of law. A copy of the release was attached to the motion and was in the terms set forth in footnote 1 to the majority opinion. The motion for summary judgment was made under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, permitting such a judgment to be entered in favor of a party against whom a claim is asserted "if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that, except as to the amount of the damages, there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." The motion asserted that as a result of the release there was no genuine issue as to any material fact. This the appellants denied. But they stipulated that the document a copy of which was appended to the motion for summary judgment was executed by them on December 14, 1940.[1] The trial court entered the summary judgment in the appellee's favor and this appeal was then taken.

It is contended by the appellants that the judgment is erroneous for the reason that under the pleadings in the trial court as stated there were two genuine issues as to material facts. As put by the appellants these were: "Was the appellee a joint tort-feasor or an independent and concurring tort-feasor? If the former, was the instrument upon which summary judgment was granted a 'release' or a 'covenant not to sue'?"

The appellants urge that if the first of these issues should, upon a hearing of evidence in the case, be resolved in such manner as to show that the torts involved were independent and concurring rather than joint, then the "release," even if strictly a release rather than a covenant not to sue, would be ineffective as to the appellee. They contend further that even if the first issue should be resolved so as to show that the appellee was a joint tort-feasor, still a question of fact would remain as to the intention of the parties to the instrument in question with respect to releasing the appellee, i. e., as to whether the parties intended it merely to be a covenant not to sue the Independent Taxi Owners Association and Driscoll with a reservation of right against the appellee, or whether they intended to release the Independent Taxi Owners Association and Driscoll and the appellee as well.

It will be seen, however, that if it is the law that the release of one of two or more tort-feasors, whether joint, or inde-

---

[1] Strictly, the stipulation admitted execution of the copy attached to the motion but the intention was obviously to admit execution of the original.

pendent and concurring, has the effect to release the others, and if, therefore, as a matter of law, the instrument executed in the instant case is a release as to all, and cannot operate merely as a covenant not to sue the Independent Taxi Owners Association and Driscoll with reservation of right against the appellee, then there is no genuine issue of material fact to be determined in the case.

Among the authorities outside the District of Columbia there is a distinct division upon the question whether the release of one of two or more joint tort-feasors operates to release all. The rule declared by the majority of the cases answers the question in the affirmative. The division is excellently annotated and the reasons therefor well stated in an opinion by Callaway, C. J., speaking for the Supreme Court of Montana, in Black v. Martin, 1930, 88 Mont. 256, 292 P. 577, 580, 581. The court in that case followed the minority or so-called modern view.

But in the District of Columbia a choice in favor of the majority or so-called ancient rule was made in the case of Kaplowitz v. Kay, 1934, 63 App.D.C. 178, 70 F.2d 782. It was upon the faith of that case that the trial court in the instant case entered the summary judgment in the appellee's favor. In Kaplowitz v. Kay it appeared that the plaintiff Kaplowitz had been injured in an automobile collision in which one Acrouri and the defendant Kay were both involved. The plaintiff asserted that they were joint tort-feasors. It appeared that before instituting suit against Kay the plaintiff executed an instrument releasing Acrouri and an insurance company in consideration of the payment of $500. On this account judgment was given at the trial for the defendant Kay upon the theory that the release of Acrouri and the insurance company operated as a matter of law to release Kay also. On appeal this was affirmed, this court saying:

"It is settled law that: 'The release of one joint tort-feasor, or the satisfaction of a judgment against one, releases all from liability. * * *' 26 R.C.L. 766. In the case of McLaughlin v. Monaghan, 290 Pa. 74, 138 A. 79, 80, it is said: 'That a valid release of one joint tort-feasor operates as a release of all is undoubted.' . . . In Farmers' Savings Bank v. Aldrich, 153 Iowa 144, 133 N.W. 383, 386, it is said: 'The weight of authority in this country seems to be unquestionably

in support of the rule that an adjustment with one wrongdoer, and his release from all further liability, discharges all the joint wrongdoers, even though there is a reserved intention, either express or implied, to look to the other wrongdoers for further damages or compensation.' In Tanana Trading Co. v. North American Trading & Trans. Co., 9 Cir., 220 F. 783, 786, it is said: 'In cases of joint torts, the injured person may sue one, or any number less than all, of the joint tort-feasors, or may sue all; and, where there is but one injury, there can be but one satisfaction. If the injured person executes a release to one of the joint tort-feasors, it operates to bar an action against the others, for the reason that the cause of action is satisfied and no longer exists.' [63 App.D.C. at pages 178, 179, 70 F.2d at pages 782, 783]" The terms of the release in Kaplowitz v. Kay do not appear in the opinion, and they do not appear in the record in that case. Hence it cannot be demonstrated that the case is precisely upon all fours with the instant case because in the latter the terms of the release show an express reservation of right against Austin. Moreover the opinion in Kaplowitz v. Kay contains not only the statements and quotations set forth above but also the following quotation from Gunther v. Lee, 45 Md. 60, 24 Am. Rep. 504: "When the plaintiff has accepted satisfaction *in full* for the *injury* done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages." (Italics supplied) (63 App.D.C. at page 178, 70 F.2d at page 782) But despite this I think that it was made clear in Kaplowitz v. Kay that it was the intention of this court to adopt the so-called ancient, or majority, rule as a considered choice. The decision has stood unmodified in this jurisdiction since 1934 as a guide to litigants and to the trial courts on the subject in question.

In view of Kaplowitz v. Kay there could be no issue of material fact under the pleadings in the instant case as to whether the parties intended the release to be merely a covenant not to sue the Independent Taxi Owners Association and Driscoll with a reservation of right against the appellee, or whether they intended to release the Association and Driscoll and the appellee also, because under the rule adopted by Kaplowitz v. Kay "an adjustment

with one wrongdoer, and his release from all further liability, discharges all the joint wrongdoers, *even though there is a reserved intention, either express or implied, to look to the other wrongdoers for further damages or compensation.*" (Italics supplied)

Also there could be no issue of material fact under the pleadings in the instant case as to whether the negligence of the Independent Taxi Owners Association and Driscoll on the one hand and that of Austin on the other was joint, or independent and concurring, in character. The contention of the appellants that the rule that the release of one of a plurality of tortfeasors releases all applies only to joint tort-feasors as distinguished from tort-feasors whose independent concurring wrong causes the injury complained of, is not well founded. An examination of the cases on this subject discloses that the overwhelming weight of authority is to the effect that the ancient rule applies indiscriminately, i. e., to both types of tort-feasors. In Muse v. De Vito, 1923, 243 Mass. 384, 137 N.E. 730, the plaintiff was injured by falling into a trap door located in the sidewalk in front of a store occupied by one McMaster. The defendant's employees, who were removing a load of waste paper from McMaster's basement through the metal trap door, left the same open and unguarded while they absented themselves to get a drink of soda. The plaintiff had released McMaster, notwithstanding which parol evidence was, over the defendant's objection, admitted at the trial to show an intention by the plaintiff to reserve a right of action against others who might be legally responsible. It was held that this was prejudicial error. The Supreme Judicial Court of Massachusetts said:

"As a matter of construction it is clear that this instrument under seal is a release, and not merely a covenant not to sue. The effect which the law attaches to a release discharging the liability of a wrongdoer is the release of other tort-feasors who are jointly liable for the injury. This rule apparently is based upon the nature of their liability, which is one and indivisible. Accordingly, if one of them is discharged, or satisfies the cause of action, there remains no foundation for an action against any one. *This rule applies not only to joint torts, strictly so called, but also to cases where the negligent acts of two or more persons operate concurrently to the injury of another, so that in effect the damages sustained are rendered inseparable.* Brown v. City of Cambridge, 3 Allen 474. See Feneff v. Boston & Maine Railroad, 196 Mass. 575, 82 N.E. 705. In the application of this rule of law, where the release is absolute and unconditional, it must be given its full effect, and cannot be varied by parol evidence introduced to show that the plaintiff intended to reserve whatever rights she had against this defendant. Boston Supply Co. v. Rubin, 214 Mass. 217, 221, 101 N.E. 133. . . . [137 N.E. at page 731]" [Italics supplied]

To this effect see also: Moss v. Cherdak, 1935, 114 N.J.L. 332, 176 A. 333; Mason v. Lavine, Inc., 1931, 302 Pa. 472, 153 A. 754; Coleman v. Gulf Refining Co., 1927, 172 Ark. 428, 289 S.W.2d 2; Lindsay v. Acme Cement Plaster Co., 1922, 220 Mich. 367, 190 N.W. 275; Cormier v. Worcester Consol. St. Ry. Co., 1919, 234 Mass. 193, 125 N.E. 549; Abb v. Northern Pac. Ry. Co., 1902, 28 Wash. 428, 68 P. 954, 58 L.R.A. 293, 92 Am.St.Rep. 864; Denver & R. G. R. Co. v. Sullivan, 1895, 21 Colo. 302, 41 P. 501; Tompkins v. Clay-Street Hill R. Co., 1884, 66 Cal. 163, 4 P. 1165; Annotation: Tort-feasors, Release of One (1927) 50 A.L.R. 1057. And compare: Feinstone v. Allison Hospital, 1932, 106 Fla. 302, 143 So. 251; McCoy v. Louisville & N. R. Co., 1906, 146 Ala. 333, 40 So. 106; Hartigan v. Dickson, 1900, 81 Minn. 284, 83 N.W. 1091. The appellants rely upon Husky Refining Company v. Barnes, 9 Cir., 1941, 119 F.2d 715, 134 A.L.R. 1221, Young v. Anderson, 1921, 33 Idaho 522, 196 P. 193, 50 A.L.R. 1056, and cases cited in the latter. Husky Refining Company v. Barnes supports the appellants' contention. Young v. Anderson does also, although it is weakened by the fact that the court said that the release involved was to be construed as having the effect of an agreement not to sue and not as an acknowledgment of satisfaction for the injuries received. The cases cited in Young v. Anderson are the following: Pogel v. Meilke, 1884, 60 Wis. 248, 18 N.W. 927; City of Chicago v. Babcock, 1892, 143 Ill. 358, 32 N.E. 271; Snow v. Chandler, 1839, 10 N.H. 92, 34 Am.Dec. 140; Miller v. Beck, 1899, 108 Iowa 575, 79 N.W. 344; Murphy v. Penniman, 1907, 105 Md. 452, 66 A. 282, 121 Am.St.Rep. 583; Pittsburgh Rys. Co. v. Chapman, 3 Cir., 1906, 145 F. 886. Pogel v. Meilke, City of Chicago v. Babcock, and

Snow v. Chandler are not in point. They involve joint tort-feasors, not tort-feasors whose wrongs were independent and concurring. Miller v. Beck is inconsistent within itself. It holds that although the wrongdoers involved were not joint and that therefore the release of one did not release the other, nevertheless since the wrong committed was an entirety and indivisible, satisfaction of judgment against one of the wrongdoers was a bar to a suit against the other. Murphy v. Penniman, holding that a release given to five directors—in a suit brought by a receiver to enforce their liability and that of other directors to a corporation for certain corporate losses—did not operate to release the others, was decided upon the ground that the receiver had no authority to execute the release and that it was accordingly void. Pittsburgh Rys. Co. v. Chapman involves neither joint tort-feasors nor tort-feasors whose wrongs were independent and concurring but tort-feasors whose negligence, if any there was on the part of one, was separate and distinct.

Since at the time of the trial of the instant case Kaplowitz v. Kay reflected the law in this jurisdiction the trial court rightly followed it. And since under the rule of Kaplowitz v. Kay there could, as demonstrated, be no issue of material fact either as to whether the appellee was a joint or an independent and concurring tort-feasor, or as to whether it was the intention of the parties to the instrument in suit to release all of the tort-feasors, including the appellee, or merely the Independent Taxi Owners Association and Driscoll, the summary judgment should, in my opinion, be affirmed.

If I understand the decision of the majority, it repudiates the rule of Kaplowitz v. Kay that release of one of a plurality of joint tort-feasors releases all and holds that if the injured party has not received full compensation from the one, the others may be compelled to respond. But the decision of necessity leaves standing George's Radio, Inc., v. Capital Transit Co., 1942, 75 U.S.App.D.C. 187, 126. F.2d 219, holding that there may be contribution between non-wilful joint tort-feasors; for, there being no question of contribu-

tion before the court in the instant case, the decision has no effect to overrule or modify the George's Radio case.

I think that the departure of the court from the doctrine of the Kaplowitz case is not supportable. The doctrine of *stare decisis* is not a formalism. It is founded in a sensible respect for past exercise of legal judgment and upon the need of certainty in legal relations. The doctrine is of course subordinate to legal reason and justice, does not require the perpetuation of pernicious error, and does not interfere with growth of the law in proper cases. But departure from precedent is to be justified only on substantial grounds. The past decisions of a court ought not be lightly overruled. Courts ought not swing from one doubtful rule to another. Change of decision as a result of change of personnel in the courts saps confidence in the law as an objective standard of decision.[2] The doctrine of the Kaplowitz case cannot be characterized as pernicious error. An undivided court in that case made a choice between two conflicting views expressed in decisions outside the District of Columbia, and the choice was not without basis in reason and practical justice. If the law as declared by the Kaplowitz case is tainted by the "metaphysics of estates"—as stated by the majority in the instant case—it nevertheless had the virtue, before decision of the George's Radio case, of simplicity and also of finality—it eliminated litigation; and even since the latter case was decided the doctrine of the Kaplowitz case reduces litigation, following settlement with one tort-feasor, to the possible single suit of the latter against his fellow wrongdoer for contribution.[3] But, under the theory of the majority opinion, with the Kaplowitz case overruled, the fellow tort-feasor may be sued by the injured party, and, following that, and contingent upon the amount of the judgment secured, there will be either a suit by the settler to exact contribution from the judgment defendant or an arbitrary reduction of the injured party's recovery. These sequelae give rise to problems which the generalized suggestions made, in view of the George's Radio case, in the majority opinion foreshadow, and which the concrete examples which I give below bring into light.

---

[2] For a discussion of the subject of departure from doctrines see 14 Am.Jur., Courts, § 124 et seq.

[3] I refer to a *possible* single suit for the reason that, as I point out below, it

has not yet been determined in the District of Columbia that a joint tort-feasor who buys his peace without judgment taken against him can compel contribution.

The majority opinion suggests that where the injured party's judgment against the joint tort-feasor is for *less* than twice the amount of the settlement, the one who has settled, since he will thus have paid more than half the total sum due the injured person, shall be allowed to recover from the other wrongdoer the amount necessary to equalize their payments. This can be illustrated as follows: If the injured party settles for $3,000 with one and obtains a judgment of $5,000 against another joint tort-feasor, then the former is to recover from the latter $500.[4] Thus in order to accomplish full payment of the injured person and equal payments by the joint tort-feasors, one settlement and two law suits will be requisite. Moreover, this suggestion presupposes that the rule requiring contribution between joint tort-feasors operates in favor of one who pays for his peace without judgment taken against him. It has been decided in Wisconsin that it does (Western Casualty & Surety Co. v. Milwaukee General Const. Co., 1933, 213 Wis. 302, 251 N.W. 491), and there is a similar decision in Kentucky (Consolidated Coach Corporation v. Burge, 1932, 245 Ky. 631, 54 S.W.2d 16, 85 A.L.R. 1086), rendered, however, under a statute which, without expressed restriction to cases in which a judgment has been obtained, permits enforcement of contribution among wrongdoers. In the District of Columbia there is no such statute, and the George's Radio case involved wrongdoers both of whom had suffered a judgment. The law here is, therefore, at least doubtful on this subject.

It is suggested further that if, after settlement with one joint tort-feasor, the injured party obtains a judgment against the other in a sum *more* than twice the amount of the settlement, such judgment shall be reduced by a credit equal to one-half thereof. This can be illustrated thus: If the settlement price paid by one joint tort-feasor is $3,000 and the judgment taken against the other is $7,000, a credit of $3,500 is to be allowed. But this results in a total of $6,500 as compensation for an injury judicially determined to have damaged the plaintiff in the sum of $7,000. Thus the injured party is deprived of the very advantage which the majority opinion

seeks to accord him by the overruling of Kaplowitz v. Kay, *i. e.,* the right to recover against another joint tort-feasor, after the release of one for less than full compensation for the injury, in order to make himself whole. The loss to the injured party will be great in cases of large damage through serious injury and settlement for a small sum with a joint tort-feasor unable to pay more. Thus if settlement is for $3,000 but the damages are adjudged to be $15,000, the injured party will receive $7,500 from the judgment defendant, a total of $10,500, but will get none of the balance of $4,500. Moreover, this suggestion of the majority assumes that it is within the proper province of a court arbitrarily to compel an injured party to accept less for his injury than the court has, by definition, determined the injury to be worth in damages. I think this doubtfully within the province of a legislature, much more doubtfully within that of a court. The attack in the majority opinion upon "the logic which characterizes such a partial scaling down of the recovery as unjust and at the same time gives approval to the total annihilation of recovery the rule of that case [the Kaplowitz case] brings about" distorts the foundation of the dissent. I do not assert that the rule of the Kaplowitz case accomplishes perfect justice. Few rules do. My position is that a court is not warranted in departing from precedent where in doing so it merely swings from one imperfect rule to another equally, if not more, imperfect one.

It is to be noted that, although the majority opinion permits, in the event of a judgment for *less* than twice the amount of the settlement, equalization of payments at the instance of the settler, who, under this supposition, has paid more than one-half of the total sum due the injured person, the position taken that a settlement once made must be treated as final (and from this there is hardly any escape), forbids equalization of payments in the event of a judgment for *more* than twice the amount of the settlement. Thus, as illustrated above, where the injured party settles for $3,000 with one joint tort-feasor and obtains a judgment of $5,000 against the other, the former is to recover from the latter $500. But where, as also illus-

---

[4] Since the injured party cannot properly recover more than full compensation for his injury, the $3,000 received in settlement will presumably be deducted from the $5,000 judgment, reducing the same to $2,000; and to equalize the payments it will be necessary then for the joint tort-feasor against whom judgment has been obtained to pay $500 to the settler.

trated above, the settlement price paid by one joint tort-feasor is $3,000 and the judgment taken against the other is $7,000, with a credit of $3,500, the judgment debtor will thus have paid $500 more than the settler but will not be able to equalize the payments by a suit against the settler.

The majority opinion does not suggest what rule for contribution should be followed in the event that the judgment is less than the amount of the settlement— a by no means impossible situation where a settler is able and willing to pay a high price for his peace but a court in the suit against the other joint tort-feasor regards the damages as slight. In that situation presumably, under the theory of the majority opinion, the judgment defendant would pay nothing to the injured party because the credit to be allowed on account of the settlement would wipe out the amount of the judgment—for example, if the settlement were for $2,000 and the judgment for $1,000. But whether or not under these circumstances the settler could exact contribution is left without answer.

It is suggested in the majority opinion that the doctrine of *stare decisis* is not involved because in the instant case the wrongdoers acted independently and concurrently, not jointly, and there was an express reservation of right to proceed against the wrongdoers not released, so that it affirmatively appears that the settlement was not made or accepted as full satisfaction for the whole injury, whereas in the Kaplowitz case the wrongdoers were joint, the settlement was in full satisfaction, and there was no reservation of a right to proceed against the one not released. As to the first suggested distinction, it is to be noted that it does not yet appear in the instant case whether the wrongdoers acted independently and concurrently, or jointly; the contention in this aspect of the case is that there was an issue of material fact as to whether the appellee was a joint tort-feasor or an independent and concurring tort-feasor. But assuming, *arguendo,* that the wrongdoers in the instant case did act independently and concurrently rather than jointly, this suggested distinction I think ignores

the fact that, as I point out above, the overwhelming weight of authority applies the rule reflected in the Kaplowitz case as well to independent and concurring tort-feasors as to joint tort-feasors. The other suggested distinction fails to recognize that the rule of the Kaplowitz case operates, as it is in terms stated therein, to discharge all joint wrongdoers after an adjustment with one and his release from further liability "even though there is a reserved intention, either express or implied, to look to the other wrongdoers for further damages or compensation"; and I think it somewhat strains the language of the opinion of the Kaplowitz case to conclude that it appears therefrom that the settlement in that case was in full satisfaction for the whole *injury* as distinguished from the whole of the *claim* made *against one tort-feasor and his insurer.*[5]

Granting that the rule of the Kaplowitz case falls short of accomplishing perfect justice, to set it aside as the majority does only to substitute therefor the complications and inequalities which, as I above point out, attend the suggestions made in the majority opinion in view of the George's Radio case, is, in my view, to jump, if not from the frying pan into the fire, at least from one frying pan into another. I think the court should let well enough alone, *i. e.,* leave standing the rule of the Kaplowitz case which, as I have said, has at least the virtue of simplicity and finality. In the words of Sir John Salmond:

". . . It does not follow that a principle once established should be reversed simply because it is not as perfect and rational as it ought to be. It is often more important that the law should be certain than that it should be ideally perfect. These two requirements are to a great extent inconsistent with each other, and we must often choose between them. Whenever a decision is departed from, the certainty of the law is sacrificed to its rational development, and the evils of the uncertainty thus produced may far outweigh the very trifling benefit to be derived from the correction of the erroneous doctrine. The precedent, while it stood unreversed, may

---

[5] The opinion in the Kaplowitz case states "It is disclosed that the plaintiff asserted a claim for damages against the *drivers of both cars,* and that the insurance company carrying insurance for Acrouri had settled the claim of the plaintiff against Acrouri by the payment to plaintiff of $500 in full satisfaction of the claim. A release was thereupon executed by the plaintiff to Acrouri, releasing *him* and *the insurance company* from any and all causes of action arising out of the collision." (Italics supplied)

have been counted on in numerous cases as definitely establishing the law. Valuable property may have been dealt with in reliance on it; important contracts may have been made on the strength of it; it may have become to a great extent a basis of expectation and the ground of mutual dealings. Justice may therefore imperatively require that the decision, though founded in error, shall stand inviolate none the less. *Communis error facit jus*[1]. 'It is better,' said Lord Eldon, 'that the law should be certain than that every judge should speculate upon improvements in it.'" . . . [Salmond on Jurisprudence (8th ed. 1930) 194–5]

I think the judgment of the lower court should be affirmed.

"[1] It is to be remembered that the overruling of a precedent has a retrospective operation. In this respect it is very different from the repeal or alteration of a statute."