ANNA TINO AND PELLEGRINO TINO, PLAINTIFFS-APPEL-
LANTS, v. ROBERT F. STOUT, DEFENDANT-RESPON-
DENT, AND FRANCES LONG, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 3, 1966—Decided March 8, 1966.

Before Judges GAULKIN, LABRECQUE and BROWN.

*Mr. Richard B. McGlynn* argued the cause for plaintiffs-appellants (*Mr. William E. McGlynn,* attorney).

*Mr. Rodman C. Herman* argued the cause for defendant-respondent (*Messrs. Whiting, Moore, Hunoval & Herman,* attorneys).

The opinion of the court was delivered by

GAULKIN, S. J. A. D. On December 29, 1954 plaintiffs recovered a judgment of $8,174.95 and costs against Stout and the Longs for injuries arising out of an accident. The Longs were not insured. In March 1955 Stout's insurance company paid plaintiffs $5,083.14, the full amount of its policy and the costs. Plaintiffs were unable to find Stout to collect anything more from him. Long earned a meager salary, inade-

quate even to support his wife and children. When pressed by plaintiffs, the Longs threatened to go into bankruptcy. Finally, in 1960 plaintiffs accepted $750 from the Longs in settlement and gave them a warrant for satisfaction of the judgment "insofar as the said Frances Long and Jack Long are concerned," but only reducing "the amount of said Judgment to * * * $2,424.95 insofar as the same affects the said Robert F. Stout."

In 1964 plaintiffs located Stout and made demand upon him for the balance of the judgment. Stout countered with a motion to mark the judgment satisfied in full as against him because the warrant given the Longs had automatically discharged him from half the face of the judgment and his carrier had paid more than the remaining half. The trial judge granted the motion. We affirm.

Plaintiff Anna Tino was injured when the Stout and Long cars collided and one mounted the sidewalk on which she was walking. The Long car was driven by Mrs. Long as Mr. Long's agent. Plaintiffs concede that if they had given the Longs a release before judgment, Stout would be entitled to credit for half the damages assessed by the jury, but they contend that after judgment is recovered against joint tortfeasors the rule is different; that then a plaintiff may release one for a small amount if he chooses and collect the balance of the judgment from the others, the argument being that the paying tortfeasors still have their remedy over against the nonpaying one for contribution because plaintiff's release to the latter cannot affect the rights of the tortfeasors *inter sese*. We disagree. We hold that an absolute release from a plaintiff to one tortfeasor discharges him from liability to the others for contribution for sums *thereafter* paid by the latter beyond their shares. From this it follows that such a release or warrant for satisfaction to one automatically gives the others the benefit of a *pro rata* reduction. See *Oliver v. Russo*, 29 *N. J.* 418 (1959); *Judson v. Peoples Bank & Trust Co.*, 25 *N. J.* 17 (1957). *Cf. Breen v. Peck*, 28 *N. J.* 351, 366 (1958); *McKenna v. Austin*, 77

*U. S. App. D. C.* 228, 134 *F. 2d* 659, 148 *A. L. R.* 1253 (*D. C. Cir.* 1943).

It is plain from the language of the warrant given to the Longs that plaintiffs did not intend to benefit Stout. However, neither did the plaintiffs in *Oliver v. Russo, supra,* when they gave one tortfeasor the covenant not to sue which was held to discharge the other *pro rata*. On the other hand, it is equally plain that when the Longs paid $750 for the warrant they expected to be free of all further liability, whether to plaintiffs or to Stout. In short, either the plaintiffs or the Longs were mistaken as to the legal effect of the warrant.

It has been pointed out that our Joint Tortfeasors Contribution Act is different from the uniform act and the acts of other states. *Theobald v. Angelos,* 44 *N. J.* 228, 238 (1965). We think our act, as construed in the reported cases, compels the conclusion which we have reached. Furthermore, we think that conclusion is the better one in terms of utility. "There is a strong policy in favor of settlements. A contribution law should provide the maximum room for settlements with a minimum of unfairness." *Ibid.,* at *p.* 237. An uninsured and impecunious tortfeasor would rarely settle for less than his *pro rata* share of the judgment unless he knew he was protected from claims by joint tortfeasors as to subsequent payments made by the latter. Otherwise there would be little reason for the impecunious joint tortfeasor to raise money to settle for less than his proportion of the judgment.

In short, it seems to us that the conclusion we have reached leaves the decision in the plaintiff's hands, where it should be. If A will not settle for less than his *pro rata* share of the judgment without complete discharge of his liability to all parties, the plaintiff may pursue the usual remedies open to a judgment creditor. If plaintiff chooses not to do so, or those remedies prove fruitless, then he must weigh his chances of recovering more from B than B's *pro rata* share and decide whether for the money offered by A he should give credit upon the judgment for A's *pro rata* share.

The judgment is affirmed. No costs.

LABRECQUE, J. A. D. (dissenting). I find myself unable to concur in the result reached by my brothers.

Although there was no crossclaim against the Longs for contribution, their liability to plaintiffs was fixed by the judgment. While plaintiffs could receive but one satisfaction of the debt owing them, they were entitled to pursue their legal remedies against one or all of defendants until payment in full was received. In general, whatever monies were received were to be credited *pro tanto* upon the judgment until it was fully discharged. They were under no obligation to seek payment from the Longs. In doing so they received $750, which reduced Stout's liability accordingly.

The majority holds that the warrant for satisfaction delivered to the Longs is to be treated in the same fashion as a pre-judgment general release, and hence effects a *pro rata* reduction in the judgment so that there is no longer any balance due thereon. But the unquestioned intention of plaintiffs was not to *satisfy* the judgment but to *acquit* the Longs from further payment thereon. We should not negate that intention unless we must. *Cf. Theobald v. Angelos*, 44 *N. J.* 228, 233 (1965). This is especially so in the absence of any testimony from the Longs indicating a contrary intention on their part.

The law favors settlement of claims regardless of whether or not they are reduced to judgment. The reasons which are said to call for application of the *pro rata* rule with reference to settlements do not necessarily apply in the case of judgments. In the case of a judgment the amount of liability has been fixed and the plaintiff, in determining whether to accept less than the full amount, needs consider only the possibility of collection from defendant. To hold that the liability of a defendant who has paid his *pro rata* share of a judgment is automatically discharged by acceptance of less than a *pro rata* share from a codefendant will inevitably discourage settlements and keep much litigation alive which would otherwise be terminated.

The right to contribution under the Joint Tortfeasors Contribution Law is inchoate, but becomes consummate and enforceable when one of the joint tortfeasors pays more than his *pro rata* share of the judgment. *Tomkovich v. Public Service Coord. Transp.*, 61 *N. J. Super.* 270 (*App. Div.* 1960), certification denied 33 *N. J.* 116 (1960). A plaintiff may not, by releasing a defendant from further payment on account of a judgment, preclude a codefendant from exercising his right to contribution for payments in excess of his *pro rata* share which have already been made. A defendant making such a settlement is chargeable with knowledge that his liability to his codefendant continues. The terms of settlement are within his control. Where he is desirous of avoiding liability to his joint tortfeasor for future payments by the latter, he has but to require that the warrant for satisfaction which he accepts be in a form which accomplishes that result. Here, since Stout had already paid more than his share, the Longs could have insisted upon a full and unconditional warrant. Then—and only then—would plaintiffs have been required to decide whether to settle on the Longs' terms or retain their rights against Stout.

Further, in a case involving acceptance by a plaintiff of a small amount from an impecunious defendant, his codefendant loses nothing in the absence of proof that a greater sum could have been recovered. Here, although $5,000 was paid on account of plaintiffs' $8,000 judgment in 1955, neither Stout nor his insurance carrier appears to have attempted to enforce contribution from the Longs. It would be foreign to the purpose of the Joint Tortfeasors Contribution Law to penalize plaintiffs here for a misstep which, as far as the record reveals, has deprived Stout of nothing. *Cf. Judson v. Peoples Bank & Trust Co.*, 25 *N. J.* 17 (1957).

I would hold that Stout is entitled to a *pro tanto* credit on the judgment for the amount received by plaintiffs from the Longs.