CHARLES L. WILSON, PLAINTIFF-RESPONDENT, v. SAMUEL E. RENNER, DEFENDANT-APPELLANT.

Submitted September 6, 1912—Decided January 29, 1913.

Where performance is pleaded by a plaintiff in an action upon a contract containing conditions precedent to which there is a plea of general denial, the plaintiff may show a waiver of performance, by the party entitled to insist upon performance, proof of such waiver being tantamount to performance.

On appeal from the Supreme Court.

For the appellant, *J. Emil Walscheid* and *Julius Lichtenstein.*

For the respondent, *Robert D. Reynolds* and *Gordon & Gordon* (of the New York bar).

The opinion of the court was delivered by

KALISCH, J. The defendant appeals from a judgment obtained against him by the plaintiff, in the Union Circuit, for $5,570. The plaintiff brought two separate actions against the defendant, one of which was founded on two promissory notes for $2,000 each, given by the defendant to the plaintiff, and the other was based upon the defendant's agreement to pay $2,000 to the plaintiff and for which sum the defendant was to give the plaintiff his promissory note payable April

1st, 1911, in which he defaulted. The actions were consolidated and tried together.

The basis of these actions was an agreement made between the parties as follows:

"Received the sum of two thousand ($2,000) dollars by check and six thousand ($6,000) dollars in three (3) notes each for two thousand ($2,000) dollars on account of the purchase price of the interest of Charles L. Wilson and others in Farkas Tungsten Lamp Company of New York, and in Farkas Tungsten Lamp Company of New Jersey, the total purchase price being ten thousand ($10,000) dollars, it being agreed that out of the ten thousand ($10,000) dollars Charles L. Wilson shall pay all outstanding obligations of both of these companies so that both of these companies shall be free from any and all indebtedness, and that he shall furnish unto Samuel E. Renner and J. Emil Walscheid acquittance for all such obligations, it being, however, understood that this agreement to pay the obligations of these companies shall not include any moneys due to the Union Hardware Company of Connecticut after the seventeenth day of October, one thousand nine hundred and ten.

"The payments to be made by said Charles L. Wilson on account, said obligations to apply to all obligations of said company up to the twenty-second day of September, A. D. one thousand nine hundred and ten.

"It is further understood that the said Charles L. Wilson shall procure for the said Samuel E. Renner and the said J. Emil Walscheid receipted bills in full for both of these companies ten (10) shares of the capital stock of the New Jersey company now outstanding, the minute books and all correspondence and papers of both companies, resignations of all directors and officers of both companies, a discontinuance of the suits of Bauchelle and Farkas Tungsten Lamp Company against Karl Farkas, signed by Mr. Frost, the attorney of record of plaintiff in said suits, a release of any and all claims for costs and services of said Frost arising out of said suit against Farkas, a general release of Bauchelle executed to Farkas Tungsten Lamp Company of New York; a general

release of Bauchelle executed to Farkas Tungsten Lamp Company of New Jersey; a general release of Bauchelle executed to Karl Farkas.

"It is further understood that he shall deliver to the said Samuel E. Renner and J. Emil Walscheid a key to the safe deposit vault of Farkas Tungsten Lamp Company of New York, in the Greenwich Bank, Herald Square, New York City.

"Upon the performance of these various acts and things by the said Charles L. Wilson, he is to receive a further note for the sum of two thousand ($2,000) dollars, signed by Samuel E. Renner, payable April 1st, 1911."

The plaintiff's declaration to recover on the two promissory notes contained several special counts averring general performance of the contract above set forth and also a willingness and readiness to perform all undertakings on the plaintiff's part. The plaintiff's declaration to recover the $2,000, for which the defendant agreed to give his note payable April 1st, 1911, contained the common counts only.

To these actions the defendant pleaded the general issue and gave notice therewith that he would set up in abatement of the damages claimed a defect in, and partial failure of consideration of the contract sued on. This notice also contains counter claims for damages alleged to have been sustained by the defendant.

At the trial counsel for the defendant consented that the plaintiff might amend his declaration to conform with the proofs and that the defendant should be considered, in addition to the plea of general issue and the notice and counter claim filed therewith, to have pleaded a denial of tender and a denial of the performance of the terms and conditions of the contract; payment of $4,500 on account, and also that he might amend the notice, by alleging fraud in the inception of the contract. Upon an inquiry made, of counsel for defendant, by the court, whether the defendant claimed a rescission of the contract, counsel for defendant answered that he did not make such a claim, and further stated that the case was to be tried out on the merits, and if it became neces-

sary to change the form of the pleading, in any respect, either of the parties was to have that privilege.

The plaintiff's proof tended to establish that he had substantially complied with all of the matters agreed to be performed by him, as set out in the contract, and as to those not complied with, the defendant had waived their performance.

The defence was that the plaintiff had not performed according to the terms of the contract and denied that it waived the performance of any of the matters agreed by the contract to be performed by the plaintiff. In addition to this the defendant claimed that the notes were obtained by fraud.

All these matters, however, were questions for the jury and were properly submitted to them, and, therefore, the refusals to nonsuit and direct a verdict for the defendant were warranted.

The defendant further urges, as a reason for a reversal of the judgment, that the trial judge, in his charge, submitted to the jury the question of waiver which, it is claimed, is not within the issues raised by the pleadings. In view of the statement made by the defendant's counsel, at the trial, as appears from the record, that the case was to be tried out upon its merits and the pleadings made to conform with the proof, and as it appears that there was proof of such facts and circumstances which were sufficient to justify a jury in finding that there was a waiver by the defendant of the performance by the plaintiff, as claimed by the plaintiff, this contention cannot prevail.

Moreover, it appears that the plaintiff pleaded performance and a readiness and willingness to perform, which the defendant traversed, and therefore an issue of fact was presented for a jury to determine.

It is a firmly-settled rule that proof of a waiver of performance by the party who is entitled to insist upon performance is tantamount to a performance. 1 *Chit. Pl.* 326; *Rawson* v. *Johnson*, 1 *East* 201.

The next ground urged by the appellant for a reversal is that the trial court erroneously overruled the following question put to Mr. Farkas, who had been engaged in managing

the factory: "Mr. Farkas, when you walked out of the plant in June, was that after your company had signed some agreements to the New Jersey company or before?"

The argument made by appellant in support of the contention that the question was improperly excluded, is to the effect that if the witness had answered that he had left after the agreements had been signed, and they were signed and executed on the 10th day of June, 1910, it would materially have strengthened the appellant's claim that the New Jersey corporation was in actual possession of the property, that it was a going concern and operating its plant, &c. But, since it appears that there was no dispute as to the time when the agreements were signed and that the witness had been fully examined, on his direct examination, as to the time when he left the company, no harm could possibly have resulted to the appellant from an overruling of the question. Besides, from an examination of the record, the question appears to have been wholly immaterial. The appellant further urges that the court erroneously charged the jury as follows:

"He comes in and defends this suit, keeping the property that he got, and rests his defence upon two grounds—*first,* that the plaintiff did not turn over everything which he agreed to turn over, and *second,* that he was induced to go into the contract by fraud, and that therefore he is not obliged to pay."

This the defendant claims was not a true statement of the defence, his insistence being that he had only set up the fraud, in the inception of the contract, for the purpose of proving and setting off money damages.

Reading the excerpt of the charge in connection with what preceded and followed it, and in the light of the evidence offered by the defendant, it becomes manifest that the trial court stated accurately the effect of such evidence.

It is further insisted by the appellant that the court erroneously charged the jury as follows:

"He turned over to the defendant in this case everything that the contract required him to turn over, or tendered to him everything excepting the minute book and some other

books relating to the New Jersey corporation which he did not have and never did have."

This is not a fair statement of the charge. In the first place, the court said that that was what the plaintiff testified to, but the court proceeded to say that if the defendant had then said that he would not pay until he got everything that the contract required, he would have had a perfect legal right to have done so, and if he had put it on that ground, the jury would have been obliged to give a verdict for the defendant, and they must do so unless they were satisfied from the evidence that the defendant waived that provision of the contract. Thus, it becomes obvious that the charge is not open to the attack made upon it by the appellant. Nor do we find any error in the instruction given by the court to the jury, with reference to the signing of the statement by Mr. Wilson, which instruction, in substance, was that if Mr. Wilson did make the statement with intent to deceive, then the defendant would have a right to take advantage of it, but if it was a mere expression of opinion, that he was saying only what he thought to be true, then it was not a fraud. A reading of the statement referred to indicates that the plaintiff was only expressing an opinion as to some matters and as to others what he had been told by Mr. Farkas, who was in charge of the plant.

Lastly, it is claimed by the appellant, that the court erroneously charged the jury: "If, in your good judgment, the evidence shows that the Vicker note was a debt of the corporation, the defendant is entitled to credit for $500, but unless that has been shown he is not entitled to credit for it."

From the evidence it appears that there was some dispute whether the Vicker note was a debt of the corporation and the court very properly submitted that question to the jury. But no error could be successfully predicated on this part of the court's charge, because it further appears that the plaintiff's claim with interest amounted to $6,675, and the verdict was for $5,570, plainly indicating that the jury allowed the defendant the amount of the Vicker note, and a claim for

money expended by defendant, to repurchase machinery amounting in the aggregate to about $500 more.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.   11.

*For reversal*—None.