**In the Matter of SCK CORP., Debtor.**

**SCK CORP., Plaintiff,**

v.

**Charles ROSENBLUM, Defendant.**

**Charles ROSENBLUM, Plaintiff,**

v.

**Morris CONSTANTIN, Stanley Constantin, and Max Sherman, Defendants.**

**Bankruptcy No. 84–0138, 84–0274.**

United States Bankruptcy Court,
D. New Jersey.

Oct. 17, 1984.

Donald Devin, Newark, N.J., for debtor.

Bruce A. Thompson, Thompson & Stoller, Aberdeen, N.J., for Charles Rosenblum.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

On February 3, 1984, SCK Corp. (SCK) filed a petition in bankruptcy under Chapter 11 of Title 11 of the U.S. Code, and thereafter continued in the possession of its assets and the management of its business as debtor in possession.

On March 30, 1984, soon after the filing, SCK commenced an adversary proceeding (No. 84–0138) against Charles Rosenblum

(Rosenblum) seeking declaratory and injunctive relief, damages, and an accounting in connection with Rosenblum's actions and status as an officer and shareholder of SCK. On April 17, 1984, Rosenblum commenced a New Jersey state court action against Morris Constantin, Stanley Constantin, and Max Sherman (Sherman) for declaratory relief, damages, and an accounting in connection with the assertion of possession and title to SCK stock which Rosenblum had purchased. On April 27, 1984, SCK, Morris Constantin, and Stanley Constantin filed an application to remove the state court action to this Court pursuant to 28 U.S.C. § 1478 and Bankruptcy Rule 9027. To the extent that such application removed the state court litigation, that action is now before this Court as adversary proceeding No. 84–0274.[1]

The central issues in each of the noted adversary proceedings relate to the right of possession and ownership of SCK's outstanding stock. The Court now examines those issues, as well as whether this Court should remand the state court action to the state court.

On October 29, 1980, Morris Constantin, Stanley Constantin, and Rosenblum were the sole shareholders of SCK. Rosenblum was its president. On that date, the three shareholders, SCK, and another corporation entered into an agreement providing, in part, for the sale to Rosenblum of all SCK stock held by Morris Constantin and Stanley Constantin. As a result, Rosenblum became the sole owner of all SCK's outstanding corporate stock. The agreement provides, in part:

... whereas Charles [Rosenblum] is desirous of purchasing ... shares of SCK from Stanley [Constantin] and Morris [Constantin]....

2. Stanley and Morris will transfer and assign all of their issued and outstanding capital stock which they hold in SCK as follows:

100 shares collectively to Charles
300 shares collectively to SCK

3. Charles and SCK shall pay to Stanley and Morris the sum of $542,700. Said sum of money shall be payable by Charles and SCK to Stanley and Morris.... Said sum of money due and owing from SCK and Charles to Stanley and Morris shall be evidenced by a Promissory Note executed by SCK and Charles to Stanley and Morris....

On December 15, 1980, pursuant to the sales agreement, Rosenblum executed (in his individual and official capacities) a note (the note) evidencing the $542,700 debt, and Rosenblum, Morris Constantin and Stanley Constantin executed a stock pledge agreement encumbering all of Rosenblum's shares in SCK.

By the summer of 1983, the note was in default. On August 11, 1983, Stanley Constantin and Rosenblum (signing in his official and individual capacities) executed an agreement embodying the terms of a settlement of that default.

At a deposition taken on June 20, 1984, Rosenblum testified that, although the settlement agreement called for continued payment for the stock sold by the Constantins, no further payments were made following the October, 1983 payment. On December 20, 1983, the Constantins assumed control of the corporation.

In the complaint filed on March 30, 1984 in this Court against Rosenblum, the debtor SCK alleges that: (1) On January 12, 1984, Morris Constantin and Stanley Constantin had been elected president and vice-president of SCK, respectively; (2) Rosenblum had forfeited his interest in SCK stock by reason of his default on the above noted agreements; (3) Rosenblum had breached his fiduciary duties by failing to pay SCK's taxes; (4) Rosenblum had improperly appropriated assets of SCK.

In the complaint filed in the Superior Court of New Jersey on April 17, 1984,

---

1. See B.R. 9027, which does not require either notice or permission of the Court prior to removal. *Also see Stern v. Snyder (In re Vic Snyder, Inc.),* 22 B.R. 332, 333 (Bankr.E.D.Pa. 1982), which interpreted Interim Local Rule 7004 (superseded by R. 9027) to provide for automatic removal.

Rosenblum alleged that: (1) he remained as president and sole shareholder of SCK; (2) between August and December, 1983, he had orally agreed with the Constantins to convey all of his shares in SCK to them in exchange for their assumption of the corporation's liabilities; (3) Morris Constantin and Stanley Constantin breached the alleged oral agreement providing for the conveyance of Rosenblum's stock to them, in that they did not appear at the scheduled time and place to consummate the oral agreement; (4) Morris and Stanley Constantin committed fraud in the manner in which they obtained possession of the corporation. Rosenblum also charged Sherman, the Constantins' lawyer, with complicity in the alleged fraud and with a breach of his duty as escrow agent under the stock pledge agreement.

The issues now before the Court arise in the context of two motions: (1) Rosenblum's motion to remand the action entitled Rosenblum vs. Constantin, et al., No. 84–0274, to the state court, which action had originally been filed in that court and removed to this Court on July 9, 1984; (2) SCK's motion in both adversary proceedings seeking a declaration that Rosenblum has no further interest in SCK, that an injunction be entered preventing Rosenblum from interfering with the operations of the debtor in the context of its Chapter 11 proceedings, and, finally, for consolidation of the two adversary proceedings.

The Court first considers Rosenblum's argument for the remand of adversary No. 84–0274 to the state court. In support of remand, Rosenblum argues that, since the debtor is not a party to that action and one of the defendants, Sherman, is not an officer or shareholder of the debtor corporation, this Court is without subject matter jurisdiction over that proceeding.

Since *Northern Pipeline Construction Co. v. Marathon Pipe Line Construction Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), wherein the United States Supreme Court invalidated the bankruptcy court's former jurisdictional grant, the bankruptcy court's jurisdiction over a pro-

ceeding has been dependent upon: (1) the existence of subject matter jurisdiction in the district courts; (2) the proper referral of the proceeding to the bankruptcy court by a district court with such jurisdiction. *See Special Report: Bankruptcy Amendments and Federal Judgeship Act of 1984*, Bankr.L.Rep. (CCH), No. 126 (7/16/84), par. 101, for a short history of the court's jurisdiction since *Marathon.*

■ District court jurisdiction is currently governed by 28 U.S.C. § 1334 and referral pursuant to 28 U.S.C. § 157. A standing order of reference of the District Court for the District of New Jersey issued on July 23, 1984.

Section 1334[b] provides that:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings ... arising in or related to cases under title 11.

The courts have differed as to the limits of the jurisdictional grant contained in that language. *Crown Central Petroleum Corp. v. Wechter (In re General Oil Distributors, Inc.)*, 21 B.R. 888, 892, n. 13 (E.D.N.Y.1982). However, even using what one court has called (in *Crown* at 892, n. 13) a conservative standard (the standard used in *Heagle v. Haug* (In re Haug), 19 B.R. 223, 224 (Bankr.Oreg.1982)—that there be a reasonable connection between the civil proceeding for which jurisdiction is sought and the parent bankruptcy case), this Court finds that a proceeding seeking determination of the ownership and control of a debtor is within the subject matter jurisdiction conferred by § 1334[b]. *See Hurt v. Cypress Bank*, 9 B.R. 749 (Bankr. N.D.Ga.1981), in which the court found that "proceedings to determine the ownership· of a debtor were within the subject matter jurisdiction created by [the identical language in] 28 U.S.C. § 1471[b] for purposes of removal pursuant to 28 U.S.C. § 1478[a]." P. 753. The district court would, therefore, have jurisdiction over an action seeking such a determination alone.

The district court's standing order and § 157 confer jurisdiction on the bankruptcy court to hear and determine "core proceedings" arising in or related to cases under Chapter 11, 28 U.S.C. § 157[b][1]. A matter concerning the administration of the debtor's estate is a core proceeding. § 157[b][2][A]. Since control of a debtor in possession goes to the very heart of the administration of the debtor's estate, it necessarily follows that the bankruptcy court may properly determine where such control resides.

Because jurisdiction over an entire case is not a prerequisite to jurisdiction over part of that case in a § 1478 removal situation, *Ford Motor Co. v. Transp. Indem. Co.*, 508 F.Supp. 1092 (D.C.E.D.Mich.1981), this Court finds that it has jurisdiction over count one of the removed action, which seeks to establish Rosenblum's ownership and control over SCK.

■ The Court finds that that portion of the state court complaint in which Rosenblum seeks a monetary judgment against the Constantins and Sherman, individually, would have no impact on these proceedings. Thus, those claims alleged in counts two through eight of the complaint remain with the Superior Court of New Jersey. Their earlier removal to this Court is deemed to be of no force and effect. *See Ford Motor Co., supra,* at 1094.

In the interest of judicial economy and because of the possible impact upon the fraud issues that may flow from this Court's determination re ownership and possession of the debtor's stock, state court litigation should await a final determination of those issues.

■ Addressing the matter of the possession and control of SCK's stock, the Court holds that the Constantins lawfully possess and control the stock of the corporation. This follows from the agreements of the parties.

The stock pledge agreement provides that:

Upon the occurrence of an Event of Uncured Default, MORRIS and STANLEY shall have the following rights: Twenty (20) days after giving written notice of intention so to do to Charles [Rosenblum], to vote all or any of the shares and give all consents, waivers, and ratifications with respect thereto, and otherwise to act with respect thereto as though they were the outright owner thereof....

The sales agreement defines default to include the failure to pay sums due under the note. The stock pledge agreement incorporates that definition into its terms. A default not remedied within the grace period becomes an uncured default. The grace period, as modified by paragraph six of the settlement agreement, is limited to ten days.

According to the terms of the note, a payment was due on November 15, 1983, with the noted ten day grace period terminating on November 25. On December 20, 1983, the date the Constantins took over control of the corporation, the default remained uncured. In fact, it has never been cured. Rosenblum cannot prevail by claiming now, as he does, that the Constantins, because of their failure to comply with the written notice of default requirement, cannot enforce the stock pledge agreement.

Factually, as noted above, the Constantins took possession and control of the corporation on December 20, 1983, some four weeks following the expiration of the grace period. It was not until April 17, 1984, the filing date of the state court action, that the question of compliance with the notice of default requirement was raised. It is well established that where a party to a contract has consistently acted in such a way as to indicate to his co-contractor that he does not intend to hold the latter to a particular provision of the contract, he is taken to have waived his right to that provision. *Neustadter v. United Exposition Service Co.*, 14 N.J.Super. 484, 492, 82 A.2d 476 (Ch.Div.1951). In light of these circumstances, the Court finds that Rosenblum waived his right to enforce that particular provision. See *Wilson v. Renner*, 85 N.J.L. 340, 343, 89 A. 758 (1913).

■ Nor can he prevail by claiming, as he does, that he signed the sales agreement in his official capacity only, and that the default was not his but that of the corporation. The language of the agreement quoted at page 3 of this opinion, stating "whereas Charles [Rosenblum] is desirous of purchasing ... shares of SCK" and "Charles and SCK shall pay to Stanley and Morris," makes it clear that Rosenblum signed the agreement in his individual capacity.

■ Turning now to the question of the ownership of the outstanding shares of SCK, presently in the physical possession of the Constantins, the Court finds that, because of the Constantins' failure to comply with the requirements of the Uniform Commercial Code to effect a change in title, Rosenblum retains ownership of subject shares.

> [U]nder the Code, ownership or title in the collateral remains in the debtor after default until such time as the secured creditor either retains the collateral after complying with § 9–505[2] or disposes of the property in compliance with § 9–504.

*In re Trans National Communications, Inc.*, 11 UCC Rep.Serv. 238, 244 (Bankr.S.D.N.Y.1972).

By reason of the above holdings, the issues common to both proceedings, namely, the right to possession and ownership of the stock, are resolved; thus, the request to consolidate the proceedings is moot. All issues in the state court proceedings remaining unresolved are to be heard in the state court.

■ SCK seeks to enjoin Rosenblum from interfering with the operation of the business and the reorganization proceeding. SCK premises its right to injunctive relief against Rosenblum upon the creditors committee's alleged refusal to negotiate with the Constantins following Rosenblum's assertion of his right to control the corporation. Having ruled that the Constantins properly control the corporation, the Court finds that there is no present justification for the issuance of the injunction. See *Continental Group, Inc. v.*

*Amoco Chemical Corp.*, 614 F.2d 351, 358–359 (3d Cir.1980).

In summary, the Court declares that the Constantins are entitled to possession and control of all of the outstanding shares of SCK stock, with Rosenblum, however, retaining title to the shares until such time as the Constantins comply with the provisions of the Uniform Commercial Code to effect a change in title. Further, the Court declines to consolidate the adversary proceedings or to grant injunctive relief, and, aside from ownership and possession of the stock, leaves all remaining issues to state court resolution.

Submit an order in accordance with the above.